JAMES K. MILLER et al., Appellants,

*v.*

HAMBLEN COUNTY BOARD OF EDUCATION et al., Appellees.

462 S.W.2d 874.

(*Knoxville,* September Term, 1970.)

Opinion filed December 21, 1970.

James K. Miller, Morristown, for appellants.

Bacon & Dugger, Morristown, for appellees.

Mr. Chief Justice Dyer delivered the opinion of the Court.

This suit was filed under our declaratory judgment statute to have the Court construe a contract entered into by the Mayor and Aldermen of the City of Morristown,

Tennessee, and the Morristown School Commission, parties of one part (referred to herein as the City), and the Quarterly County Court of Hamblen County, Tennessee, and the Hamblen County Board of Education, parties of the other part (referred to herein as the County). The chancellor heard and decided the case upon stipulations giving rise to appeal directly to this Court.

Prior to the execution of this contract in September, 1965, the City operated a high school known as Morristown High School, attended by students from both the City and the County. The County operated a high school known as Whitesburg High School, attended by students living in the eastern section of the County. Under this arrangement the City operated high school became overcrowded necessitating consideration be given to further school plant construction. To solve the problem the City and County, Pursuant to T.C.A. secs. 49-410 to 49-414, entered into the contract in question.

Under the contract Whitesburg High School was to be closed, relieving the County of the burden of operating the high school; Morristown High School was to be renovated and a new high school constructed on another site, making upon performance of the contract two high schools to be operated. The County was to issue school bonds necessary for the renovation and construction with the City releasing all claims it would have to any portion of the school bond proceeds. The City was to operate both the renovated Morristown High School and the new high school to be constructed, with all students in both the City and County attending one or the other of these high schools according to a zoning plan.

The issue here is the contribution to be made by the County in the operation of these two high schools under this contract. The part of the contract pertinent to this issue is as follows:

Beginning with the school year 1966-67 and thereafter, the high school students residing in that portion of Hamblen County lying outside the corporate limits of the Town of Morristown shall have the right to attend either high school, according to a zone plan approved by Morristown School Commission. In consideration for such services, Hamblen County or Hamblen County School Board shall pay to the Morristown School Commission or the Town of Morristown, for each such high school student so attending Morristown High Schools, a sum of money equal to their proportionate share of expenditures of local supplementary funds required per child to operate the Morristown High School Systems over and above the amount provided by State and County under the minimum program required by the State.

The chancellor found as follows:

| | |
|---|---:|
| Estimated cost of operation of high schools.......... | –$1,003,829.34 |
| This amount is paid by state minimum program funds allocated to high schools and in this case............ | 500.154.75 |
| This leaves the balance of ...................... | $ 503,674.59 |
| From the schedules and briefs, Hamblen County from its general county funds allots to the high schools the sum of ................................. | – 266,476.00 |
|     This amount should be deducted from the $503,674.59, leaving a balance to be paid proportionately under this contract by the County and City of .......... ...................... | $ 237,199.00 |

The parties agree that the total number of students in high school is approximately 2,000 and that the number is divided as follows:
    Number of City students in high school 1,100 (55%)
    Number of County students in high school 900 (45%)
    Total—2,000 (100%)

It therefore follows that the City should pay fifty-five (55%) per cent of $237,199.00, which is $130,459.00, and the County should pay its share of forty-five (45%) per cent, which is $106,740.00.

It will help to clarify the issues if we consider the operation of these two high schools pursuant to the contract as if there were a third school district; the other two school districts being the operation of grades one through eight by the City, and the operation of grades one through eight by the County.

The parties agree the figure of $503,674.59 is the sum needed from local funds in the operation of these high schools. The City assigns error to the action of the chancellor in allowing credit against this cost the figure above of $266,476.00 prior to determining the fifty-five percent the City will pay and the forty-five per cent the County will pay.

This figure of $266,476.00 was arrived at under the following facts: the County levies and collects property taxes, local sales taxes, and other miscellaneous taxes, which are allocated by the Trustee for school purposes on the basis of average daily attendance. The total of these taxes for the year used in the stipulation was $1,028,600.00. On the basis of average daily attendance the County school grades one through eight had forty per cent of the pupils and were allocated $411,440.00. The City schools, grades one through eight, had thirty-four per cent of the pupils and were allocated $350,684.00. These two high schools had twenty-six per cent of the pupils and were allocated $266,476.00, the sum credited by the chancellor.

The General Education Act of 1965, Chapter 76, Public Acts of 1965, in force at the time of the execution of this contract, provided in Section 8(1) (c) as follows:

> All school funds for current operation and maintenance purposes collected by any county * * * shall be apportioned by the county trustee among the county, city, and special school districts therein on the basis of the average daily attendance maintained by each in grades one through twelve, during the current school year.

The above provision is also contained in the General Education Acts of 1967 and 1969.

Under this statute the trustee was required to allocate these school funds on the basis of all the students attending all the schools, grades one through twelve. This the trustee has done and we find nothing in the contract to the contrary. Construing the language of this contract in light of this statute, we think the chancellor was correct in crediting the amount of $266,476.00 prior to determination of the amount the City and the County should pay.

■ At the time this contract was negotiated there were bonds outstanding on the Morristown High School issued by the City. The executed contract is silent in regard to these bonds. The City contends the annual amount necessary for the retirement of these bonds should be included each year in the total cost of the operation of these high schools. The issue is whether the word "operate" as it is used in that portion of the contract copied above in this opinion should include the amount necessary to retire these bonds each year. The chancellor held the bond payments due were not an "operating expense." We agree.

■ The City assigns as error the claim that the chancellor pretermitted the question of local sales tax credits. The receipt from sales tax collections by the County, that is, the one-half thereof as required by T.C.A. sec.

67-3052, went with other County taxes to make up the sum of $1,028,600.00 collected by the County for school purposes as shown above in this opinion. When this figure was broken down on the basis of average daily attendance, we arrived at the figure of $226,476.00, which includes the high schools' part of the sales tax. We do not think the chancellor pretermitted this issue, but correctly included the receipts from the sales tax in with other county taxes for school purposes.

We note slight mathematical errors in some of the computations, but since the figures in the stipulations are given as a guide, changing from year to year, any such errors are immaterial.

The judgment of the lower court is affirmed.

CHATTIN, CRESON and HUMPHREYS, JUSTICES, concur.

McCANLESS, JUSTICE, not participating.