HAMBLEN COUNTY et al.

v.

CITY OF MORRISTOWN et al.

Court of Appeals of Tennessee,
Eastern Section.

May 25, 1979.
Certiorari Denied by Supreme Court
July 30, 1979.

. Earnest R. Taylor of Taylor, Tilson, In-man & Reams, Morristown, for Hamblen County.

Richard C. Jessee of Bacon, Dugger, Jessee & Perkins, Morristown, for City of Morristown.

## OPINION

PARROTT, Presiding Judge.

This suit concerns the validity of a contract between Hamblen County and the City of Morristown for the operation of two high schools.

In 1965 the Quarterly Court of Hamblen County and the Hamblen County Board of Education, one party, (hereinafter referred to as the County), and the Mayor and Aldermen of the City of Morristown and the Morristown School Commission, the other party, (hereinafter referred to as the City), entered into a written agreement calling for the construction of a new public high school and the renovation of the existing Morristown High School to be financed by the general funds of the County raised primarily through the sale of general obligation bonds.

The contract was necessitated by the overcrowding of the existing city high school which had for some period of time been attended by county students living outside of the corporate limits without compensation to the City.

Pursuant to the contract, the County was to acquire the necessary land for the new high school and thereafter lease this land to the City "for such time and so long as the same is used for educational purposes for city and county students." The land was so acquired, the new high school, West, constructed, and the existing high school, East, renovated, although no lease agreement was ever entered into.

These two schools have been operated by the Morristown School Commission and by its successor, the Board of Education of the City of Morristown, for approximately eleven years. (For a review of other related facts see *Miller v. Hamblen County Board of Education*, 225 Tenn. 18, 462 S.W.2d 874 (1970).

In 1976 Hamblen County filed this suit in chancery court seeking to have the contract set aside and requesting restoration of the right to operate West High. The chancellor granted the County's motion for partial summary judgment but the decision was reversed by this Court on a discretionary appeal and remanded for a trial on the merits.

The trial resulted in a final judgment for the County. The contract was held void and unenforceable for numerous reasons that will be discussed below, and the County was ordered to pay to the City the existing equity in West High School, $2,205,394.93. Title to West High School was ordered to be vested in the County and title to East High was ordered retained in the City.

From this judgment both parties have appealed. The County contends that the chancellor erred in this determination as to the amount of compensation owed to the City. The City makes nine assignments of error; five relate to the determination that the contract was void, and two each related to the failure to find the County equitably estopped from denying the validity of the contract and to the amount of compensation awarded.

The basic issue before this Court is whether or not a county school board can contractually delegate the power to administer the operation of a public high school to a city board of education where the high school is used for the education of both city and county students. We will address this issue by addressing each of the five assignments of error relating to the validity of the contract. These assignments are:

(1) The court erred in holding the contract void because it was without statutory authority.

(2) The court erred in holding the contract void because it constituted an unlawful delegation and surrender of authority.

(3) The court erred in holding the contract void because it was violative of the due process and equal protection clauses of the state and federal constitutions.

(4) The court erred in holding the contract void because it extended beyond the terms of those in office at the time of its making and was therefore violative of public policy.

(5) The court erred in holding the contract void because it was in perpetuity.

■ The plenary power to establish and maintain a public school system is a state function and is vested in the state legislature. *Board of Education of Memphis City Schools v. Shelby County,* 207 Tenn. 330, 339 S.W.2d 569 (1960). General operation and management of the educational system can be delegated by the legislature in any reasonable manner not constitutionally prohibited.

Chapter 4 of Tennessee Code Annotated deals with the transfer of schools and the joint operation of school systems. Two code sections therein and one section from Chapter 2 dealing with local administration are specially applicable to this suit. These sections are:

49–410. JOINT OPERATION OF SCHOOLS—CONTRACTS BINDING.— The boards of education of any two (2) or more school systems are authorized and empowered to establish, maintain and operate a public school or schools jointly by entering into contracts for that purpose. Upon the execution of contracts §§ 49–410—49–414 by the respective boards of education, the same shall be binding upon the said boards of education and upon the counties, cities and special school districts involved.

49–413. ADMINISTRATION OF JOINT SCHOOLS—RECEIPT AND DISBURSEMENT OF FUNDS.—The administration of schools established, maintained and operated pursuant to a contract entered into under §§ 49–410—49–414 may be placed under the board of education of the county, city or special school district in which such school is located; or the administration of such schools may be placed under a board of control created pursuant to the terms of said contract. In the event such a board of control is created, it shall elect its own

chairman and secretary and may designate as ex officio secretary the superintendent of schools of the county, city or special school district in which said school is located; and any such board of control shall exercise all the administrative powers and functions with respect to such school that county boards of education are authorized to perform and exercise with respect to the operation of county schools. Provided, however, such schools may be administered by such other persons and in such other manner as the terms of the said contract may provide. The county trustee or treasurer or other fiscal or disbursing officer, as the case may be, of the county, city or special school district in which such school is located, or such other disbursing officer as may be designated by the contract, shall have the same powers, rights and duties with respect to the receipt, protection and disbursement of the funds allocated to or for the use of such school as provided by law for other school funds.

49–231. COUNTY CONTRACTS FOR TEACHING IN PRIVATE, CITY OR SPECIAL DISTRICT SCHOOLS.—The county board of education shall have the power to make contracts with the proper authorities of private schools, or with city or special school district boards of education whereby the county public elementary and high school may be taught in said private or city schools; provided, that the public elementary and high school branches be taught free of charge to all pupils of the county entitled thereto; provided, further, that the contract may provide that the school shall be administered by either the city, special school district, or county board of education upon the condition that the board charged with administration of the school shall employ duly certified teachers and shall otherwise comply with other state laws pertaining to education, and shall in no way interfere with the powers devolved upon the commissioner of education in connection with the county public elementary and high schools, and in the event of contracts with private schools

that no teacher shall be employed in such private school unless said teacher has a teacher's certificate of such grade as may be prescribed for his employment and unless the employment of said teacher shall be approved by the county board of education; and provided further that the authority of the state commissioner, county superintendent and all public school officers shall be as full and ample in such private schools as in other county public elementary and high schools.

This section shall not be construed as authorizing a contract by a county board of education with a church sponsored or church related or a parochial school.

■ The authority of a county board of education to contract with a city board of education for the operation of a joint system appears clearly available under the above cited code sections. Such authority has been approved by the courts of this state, *Brown v. Monroe,* 161 Tenn. 703, 34 S.W.2d 209 (1930), and is not constitutionally prohibited by our state's constitution. Furthermore, the powers to delegate administrative duties related to the operation of joint schools to another school board is provided in T.C.A. 49–413. We, therefore, sustain the first two assignments of error made by the appellant-City.

■ In its reply to the third assignment of error the County contends that the application of T.C.A. 49–410 and 49–413 in this situation so as to allow the city board of education to govern the operation of county schools is in violation of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and of the "one man—one vote" principle of the Fourteenth Amendment.

The one man—one vote principle generally applies to elected bodies, not appointed boards. *Hadley v. Junior College District,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), and numerous cases have specifically held that the one man—one vote principle is not applicable to a school board where the selection of board members is by means

other than popular vote. *Sailors v. Board of Education*, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650; *Oliver v. Board of Education* (D.C.N.Y.) 306 F.Supp. 1286. If the board was elected, the one man—one vote principle would clearly apply in Tennessee, *Stickland v. Burns* (D.C.Tenn.) 256 F.Supp. 824, but there is no requirement that nonlegislative officers be elected. *Wallis v. Glue* (D.C.Ga.) 263 F.Supp. 965; *Sailors*, supra. The one man—one vote principle is not, therefore, applicable in this situation.

The County also contends that its citizens living outside the corporate limits of Morristown are effectively denied any voice in the appointment of school board members who administer the two high schools since their appointment is made by the city council for whom they cannot vote. The contention is true, but its mere truthfulness does not connote any constitutional violation.

As noted before, the statutes of this state clearly give the County the authority to delegate the duty of administering certain schools. The County, through its elected officials and by popular referendum adopted and approved a contract which the parties have interpreted to delegate such duties. Any power the County had over the operation and maintenance of schools comes directly from the state through its legislation; all educational programs are a function of the state. The state can, therefore, authorize the County to delegate any authority which it has given. As was stated in *Keese v. Hamilton County*, 184 Tenn. 171, 197 S.W.2d 800 (1946), "the very life of the school depends upon the will of the county government." In this situation the county government contracted to place its high school system under city operation. Such action does not violate either substantive or procedural due process. Adequate safeguards to protect the rights of the county citizens were taken. The citizens had notice and an opportunity to be heard. Furthermore, statutory requirements concerning the proper operation of the schools exist, and legal remedies such as a writ of mandamus are available to guarantee and protect the County's right to a proper and adequate educational system.

The City's third and fourth assignments of error are sustained.

The contract provides that the lease shall run "so long as the same (the newly constructed high school) is used for educational purposes . . . ." This section, although indefinite, is clearly not perpetual. As a general rule, contracts which do not create rights to property are not subject to the rule against perpetuities. If, however, the contracts create a right to property which equity can enforce, such as the lease provision in the present contract, the rule is applicable and for the contract to be valid, the agreement must not transcend the rule. The rule against perpetuities is concerned with the creation of and not the termination of an estate. Leases, therefore, which commence at once do not violate the rule whether or not the lease period continues beyond the allowed period for vesting. See 61 Am.Jur.2d, Perpetuities, §§ 41 and 42.

Furthermore, the statement that the contract is "binding and irrevocable" does not render the contract perpetual. The intentions of the parties in entering into this contract are manifested within the language of the agreement. The agreement calls for extensive expenditures and long term commitments. Both parties needed protection from arbitrary rescission. This Court interprets irrevocable to mean that the contract could not be revoked at will by one of the parties over the objection of the other. See *Independent School Dist. No. 35, St. Louis County v. Hedenberg & Co.*, 214 Minn. 82, 7 N.W.2d 511 (1943). The contract is and was clearly revocable for material breach by either party or by mutual agreement. We therefore, sustain the fifth assignment of error.

This Court also finds the County equitably estopped from denying the validity of the contract.

Having found the contract valid, we do not reach the question of damages.

Before concluding this opinion, we want to point out that we have not overlooked Hamblen County's insistence that it has no voice in the operation of the school system which is providing education for county children. While it may be true that they have not exercised and may have abdicated control to the City, we find nothing in the contract which would give the City exclusive authority to operate the system.

The decree of the chancellor and the award of compensation is reversed and vacated. The costs of this appeal are taxed to the County.

GODDARD and FRANKS, JJ., concur.