of this appeal are adjudged against the defendant.

FONES, HENRY and HARBISON, JJ., and TODD, Special Justice, concur.

YEARWOOD AND JOHNSON ARCHI-
TECTS, INC., Plaintiff-Appellee,

v.

Brown LANGFORD et al., Composing the Gibson County Board of Education, Defendants-Appellants.

Court of Appeals of Tennessee, Western Section.

June 21, 1979.

Certiorari Denied by Supreme Court Oct. 22, 1979.

Hal Holmes, Trenton, for defendants-appellants.

B. G. Marks, McMinnville, for plaintiff-appellee.

EWELL, Judge.

Yearwood and Johnson Architects, Inc., sued Gibson County Board of Education on a contract dated April 9, 1969, for the sum of $95,627.00 allegedly due and owing under said contract. The case was heard by the Chancellor who entered judgment for the plaintiff in the amount sued for, and the defendant appealed.

In 1969 the State Department of Education found some deficiencies in the Gibson County school system, and the Gibson County Board of Education in an effort to reduce the deficiencies contemplated a building program. After conducting interviews with a number of architectural firms the Board employed Yearwood and Johnson Architects, Inc., of Nashville, Tennessee. The parties executed an eight page written contract entitled "Standard Form Agreement Between Owner and Architect on a Basis of a Percentage of Construction Costs" drafted by Yearwood and Johnson with some additions and/or modifications suggested by the Board. The portions of the contract material to this litigation are as follows:

AGREEMENT

made this the 9th day of April in the year of Nineteen Hundred and sixty-nine

BETWEEN

Gibson County Board of Education

the Owner, and

Yearwood and Johnson, Architects, Inc.

the Architect.

It is the intention of the Owner to build a school building or buildings; and to assist the Owner in selection and bidding of furniture. The furniture shall be selected by the architect upon the Owner's request only.

hereinafter referred to as the Project

The Owner and the Architect agree as set forth below.

I. THE ARCHITECT shall provide professional services for the Project in accordance with the Terms and Conditions of this Agreement.

II. THE OWNER shall compensate the Architect, in accordance with the Terms and Conditions of this Agreement, as follows:

a. FOR THE ARCHITECT'S BASIC SERVICES, as described in Paragraph 1.1, a Basic Fee computed at the following percentages of the Construction Cost, as defined in Article 3, for portions of the Project to be awarded under

A Single Stipulated Sum contract 6% of the first one million dollars of each project and 5% of the cost of each project exceeding one million dollars.

| Example: | Project #1: | Construction Cost | $1,500,000.00 | | |
|---|---|---|---|---|---|
| | | Architects Fee 6% of | $1,000,000.00 | = | $60,000.00 |
| | | 5% of | 500,000.00 | = | 25,000.00 |
| | | | total | | $85,000.00 |
| | Project #2: | Construction Cost | $500,000.00 | | |
| | | Architects Fee 6% of | 500,000.00 | = | 30,000.00 |
| | | Architect Fee for: | | | |
| | | Project #1 | 85,000.00 | | |
| | | Project #2 | 30,000.00 | | |
| | | Total Fee | $115,000.00 | | |

## ARTICLE 3

### CONSTRUCTION COST

3.1 Construction Cost to be used as a basis for determining the Architect's Fee for all Work designed or specified by the Architect, including labor, materials, equipment and furnishings, shall be determined as follows, with precedence in the order listed:

3.1.1 For completed construction, the total cost of all such Work;

3.1.2 For Work not constructed, the lowest bona fide bid received from a qualified bidder for any or all of such work; or

3.1.3 For work for which bids are not received, (1) the latest Detailed Cost Estimate; or (2) the Architect's latest Statement of Probable Construction Cost.

3.2 Construction Cost does not include the fees of the Architect and consultants, the cost of the land, rights-of-way, or other costs which are the responsibility of the Owner, as provided in Paragraphs 2.3 through 2.6 inclusive.

### ARTICLE 4 (deleted)

### ARTICLE 5 (deleted)

### ARTICLE 6

### PAYMENTS TO THE ARCHITECT

6.1 Payments on account of the Architect's Basic Services shall be made as follows:

6.1.1 (deleted)

6.1.2 Subsequent payments shall be made monthly in proportion to services performed to increase the compensation for Basic Services to the following percentages of the Basic Fee at the completion of each phase of the Work:

Schematic Design Phase ............15%
Design Development Phase .........35%
Construction Documents Phase ......75%
Bidding or Negotiations ...........80%
Construction Phase ...............100%

6.2 (deleted)

6.3 No deduction shall be made from the Architect's compensation on account of

penalty, liquidated damages or other sums withheld from payments to contractors.

6.4   (deleted)

### ARTICLE 7 (deleted)

### ARTICLE 8

### TERMINATION OF AGREEMENT

This Agreement may be terminated by either party upon seven days' written notice should the other party fail substantially to perform in accordance with its terms through no fault of the other.   In the event of termination due to the fault of others than the Architect, the Architect shall be paid his compensation for services performed to termination date.

.     . .    .     .     .

Contingency Clause:

It is agreed by both parties of this contract that the Architect shall not be paid for his services if the money for the project is not appropriated.   It is further agreed that the working drawings for this project will not be made until all money is appropriated or the Architect is paid for his preliminary design.   When the money is appropriated, this condition shall be canceled by a letter to the Architect.   It shall be understood that this Architect shall remain the architect of this project until it is completed, or that he be compensated in accordance with this contract for the work done.

.     .     .     .     .

Yearwood and Johnson working with the Board first approached the matter contemplating a single project consisting of the construction of a 1200 student school housing grades ten through twelve.   After substantial public opposition developed to a single consolidated school, further consideration was given to dual projects including a 700 student school and a 500 student school. Finally, Yearwood and Johnson, upon instructions from the Board, performed further work contemplating an 800 student and a 600 student school.   This last alternative was approved by the Board and recommended to the Quarterly County Court of Gibson County for funding.   In October of 1970 the County Court rejected the proposal of the Board and declined to provide funding.

There were no substantial developments from the fall of 1970 until 1976.   During this time there were regular, periodic contacts between representatives of Yearwood and Johnson and representatives of the Board, but the Board did not call upon Yearwood and Johnson to perform any services in addition to those rendered between April of 1969 and October of 1970. By 1976 the State Department of Education was applying substantial pressure upon the Gibson County Board of Education to take some positive action toward remedying the deficiencies in the school system.   Ultimately the inaction of the Board resulted in state funds being temporarily cut off, and the Board under this pressure decided to construct a new consolidated high school on property adjacent to the existing vocational-technical center.   Without further consultation with or notice to Yearwood and Johnson, the Board hired the architectural firm of Thomas, Ross, Stanfill and Associates, Inc., of Jackson, Tennessee, and entered into a written contract with that firm dated December 1, 1976.   No explanation is given for the action of the Board in changing architectural firms, and there is no suggestion that the services of Yearwood and Johnson had not been perfectly satisfactory.

The Board working with the new architectural firm ultimately secured funding through the Quarterly County Court of Gibson County for the construction of an 800 student high school to be constructed adjacent to the vocational-technical center. This location was approximately halfway between the two sites contemplated for the construction of the 800 student high school and the 600 student high school in 1970.

Upon learning of the employment by the Board of a new architectural firm, Yearwood and Johnson met with the Board and insisted upon payment under the terms of its contract.   It is uncontroverted that Yearwood and Johnson had performed sub-

stantial services through the "Design Development Phase" of the dual projects contemplated in 1969 and 1970. It is also uncontroverted that Yearwood and Johnson had received no compensation for these services. The Board insisted that under the contingency clause of the contract all obligations to Yearwood and Johnson had terminated when the Quarterly County Court declined to fund the proposed projects in 1970. Yearwood and Johnson insisted that under that clause it had been employed to see the project to a conclusion unless compensated for the work done as provided under the contract. The Board insisted that the 1976 project was a new and different project unrelated to the 1969–1970 project; and Yearwood and Johnson insisted that the 1976 project was no more than a continuation of the project originally contemplated and begun in 1969.

The Board declined to pay and Yearwood and Johnson filed suit. The Chancellor accepted the theory of Yearwood and Johnson both as to liability and damages, awarding judgment in the amount sued for.

The reasoning of the plaintiff and the Trial Court with respect to damages was based upon the resolution presented to and rejected by the Quarterly County Court of Gibson County in October of 1970. The resolution called for the appropriation of $4,975,643.94 to fund the construction of both an 800 student high school and a 600 student high school. These figures were based upon two separate documents dated May 12, 1970, prepared by Yearwood and Johnson, entitled "Preliminary Statement of Probable Construction Cost", one of which related to the 600 student high school and the other to the 800 student high school. Under the contract the total compensation payable to Yearwood and Johnson would have been 6% of the first $1,000,000.00 of the construction costs of each project and 5% of all over $1,000,000.00 of the construction costs of each project as defined under Article 3 of the contract. Since neither of the projects were constructed and bids were not received, the construction costs were based upon the latest statement of probable construction costs

as provided in Article 3.1.3(2) of the contract. Also, since the services of the architect did not extend beyond the Design Development Phase, the compensation awarded was 35% of the total compensation as provided in Article 6.1.2 of the contract.

On appeal the Board insisted that the Trial Court erred in entering judgment for the plaintiff because:

(1) Any construction of the contract which will support a judgment renders the contract either void *ab initio* or unenforceable.

(2) There is no competent or material evidence to support the judgment; and the evidence preponderates against the judgment of the trial court.

(3) Plaintiff's claim is barred by the six year statute of limitations set forth in T.C.A. 28–309.

(4) Judgment in the amount of $95,627.00 was excessive under the formula provided in the contract; and that under said formula plaintiff's recovery could have been no more than $36,750.00.

Pursuant to T.C.A. 27–303, all cases tried in a court of record without the intervention of a jury and which come to this Court are heard *de novo* upon the record of the Trial Court, accompanied by a presumption of the correctness of the judgment or decree of the Trial Court, unless a preponderance of the evidence is otherwise. *Edwards v. Edwards,* 501 S.W.2d 283 (Tenn. App.1973); *Davis, v. Bank of Illinois,* 561 S.W.2d 144 (Tenn.1978); *Pettyjohn v. Brown Boveri Corporation,* 63 Tenn.App. 546, 476 S.W.2d 268 (1971); *Tipton County Board of Education v. Dennis,* 561 S.W.2d 148 (Tenn.1978).

In the second assignment of error the Board insists that the evidence preponderates against the judgment of the Trial Court. We have carefully reviewed all the evidence in the case and find that, except as hereinafter noted with respect to damages, the evidence strongly preponderates in favor of the judgment of the Trial Court. The relevant terms of the contract are clear and unambiguous, and the material facts in

the case are undisputed. When a contract is plain and unambiguous it is the Court's function to interpret it as written, according to its plain terms. *Petty v. Sloan,* 197 Tenn. 630, 277 S.W.2d 355 (1955).

█ Under the contingency clause of the contract, which clause was actually suggested and insisted upon by the Board, the Board contracted to retain Yearwood and Johnson as architects until the project was completed, or, in the alternative, to compensate Yearwood and Johnson in accordance with the contract for the work done until the time of its dismissal. In the same clause Yearwood and Johnson agreed that it would not be paid for its services if the money for the project was not appropriated. The record clearly shows that the 1976 project ultimately funded by the County Court was one and the same as that begun in 1969. An 800 student high school was one of the two schools planned for by Yearwood and Johnson at the direction of the Board but which the County Court declined to approve; and an 800 student high school was ultimately approved by the County Court although in a different location. We find that the Trial Court did not err in holding that the Board was liable to Yearwood and Johnson for compensation as provided by the contract. Therefore, the second assignment of error is overruled.

█ In the first assignment the Board insists that any construction of the contract which would support a judgment renders the contract either void *ab initio* or unenforceable. The statutes and cases cited by the attorney for the Board in support of this assignment are not applicable to the facts of this case and do not constitute authority for the propositions stated in the assignment. We consider it unnecessary to discuss each of the several statutes and cases which are ably briefed and distinguished by the attorney for Yearwood and Johnson in his Reply Brief. The contract was approved by the Gibson County Board of Education as reflected in its minutes and was thereafter executed by seven members of the Board. No valid reason is advanced as to why the contract would be void *ab*

*initio.* The Board voluntarily and properly entered into the contract and thereafter accepted substantial services performed by Yearwood and Johnson pursuant thereto. We find that the construction given to the contract by the Trial Court as to liability of the Board was fair and reasonable as well as consistent with the language and obvious intent of the parties. See *Oman Construction Co. v. Tennessee Central Ry. Co.,* 212 Tenn. 556, 370 S.W.2d 563 (1963). The governing body of Gibson County was not a party defendant in this litigation, and, therefore, the enforceability of the contract against that body was not litigated and determined below. Accordingly, we will not address that issue. The first assignment of error is overruled.

█ In its answer below the Board pled T.C.A. 28–309 as a bar to the recovery of Yearwood and Johnson in that this suit was filed more than six years after the services under the contract were completed; and the Board continues to press this defense on appeal. T.C.A. 28–309 provides that the action must be commenced within six years after the cause of action accrued. Under the terms of the contract the cause of action could not have accrued prior to the funding of the project since the contingency clause specifically provided that Yearwood and Johnson would not be paid for its services if the money was not appropriated. Suit was filed well within the statutory period. Therefore, the third assignment of error is overruled.

█ In the fourth assignment of error the Board insists that the amount of recovery awarded by the Trial Court was excessive, and we find that this assignment has merit although we do not adopt the formula urged by the Board. The work performed by Yearwood and Johnson was in contemplation of two projects, namely, (1) a 600 student high school and (2) an 800 student high school. The County Court ultimately funded the 800 student high school but has not funded the 600 student high school. Under the contingency clause Yearwood and Johnson is not entitled to compensation for services in connection with a project for

which money is not appropriated. It follows that the Trial Court erred in awarding compensation based upon the construction costs of both a 600 student high school and an 800 student high school.

Trial exhibit number 32 introduced by the plaintiff through the testimony of Ed Jordan Johnson of Yearwood and Johnson reflects that the probable construction cost of the 800 student high school, was $3,032,210.60. Under the contract the total compensation to which Yearwood and Johnson would be entitled for the completed project would be 6% of the first one million dollars and 5% of the balance of $2,032,210.60. Therefore, the total allowable compensation for this project under the clear terms of the contract would be $161,610.53. Since the work done by Yearwood and Johnson extended through the Design Development Phase, under Article 6.1.2 it would be entitled to 35% of the total compensation or $56,563.69. We find and hold that the Chancellor erred in awarding to Yearwood and Johnson the sum of $95,627.00 based upon both projects when the maximum to which Yearwood and Johnson would be entitled under the terms of the contract and the proof in this record would be $56,563.69. To this extent the fourth assignment of error is sustained.

Accordingly, the judgment of the Trial Court will be modified so as to award to Yearwood and Johnson judgment in the amount of $56,563.69 against the Board; and the costs on appeal will be assessed equally against the appellant and the appellee; and the case is remanded to the Chancery Court of Gibson County at Trenton for the enforcement of the judgment of this Court.

NEARN and SUMMERS, JJ., concur.