**WASHINGTON COUNTY BOARD OF EDUCATION, Plaintiff-Appellant,**

v.

**MARKETAMERICA, INC., Defendant-Appellee.**

Supreme Court of Tennessee, Eastern Section, at Knoxville.

July 1, 1985.

Mark C. Hicks, Jr., Jonesboro, for plaintiff-appellant.

J. Paul Coleman, Charles T. Herndon, IV, Johnson City, for defendant-appellee.

## OPINION

DROWOTA, Justice.

In this declaratory judgment action, the Washington County Board of Education seeks to have its contract with MarketAmerica, Inc. declared null and void *ab initio*. The trial court granted the relief sought, on grounds the Plaintiff was without authority to enter into the contract in the first place. A divided Court of Appeals reversed, and we granted Plaintiff's application for permission to appeal.

The dispositive issue in this lawsuit is whether a county school board has the statutory authority to enter into a contract which requires contract payments beyond the current fiscal year and which therefore would bind future school boards. The issue is one of importance to the fiscal affairs of local governments in Tennessee.

The contract at issue in the case at bar is a "Management Service Agreement" whereby Defendant MarketAmerica, Inc. agreed to provide a service that would purportedly reduce energy consumption in the Washington County School System. MarketAmerica installed computerized energy monitoring equipment in various school buildings which was designed to significantly reduce energy consumption and thereby result in significant cost savings to the Washington County School System. The Board of Education in turn agreed to pay a fixed sum monthly to MarketAmerica, which was calculated as a fixed percentage of the amount of money saved by the school board as a result of lower utility bills. The billing procedure detailed in the contract was intended to insure that the Board of Education will pay to MarketAmerica 55 per cent of the actual savings generated by the computerized monitoring system. MarketAmerica guaranteed that power bills would be reduced by at least 27 per cent over bills in a base period, with adjustments for changes in temperature and fuel costs. The period September 1981 through October 1982 was selected as the base period. During installation of the system, savings were to be shared on a 50/50 per cent basis. The agreement was for seven years, with options available to renew the agreement or to purchase the equipment at the end of seven years. An addendum to the contract required the Board of Education to provide to MarketAmerica, Inc. documentation that future school boards would be bound to the terms and conditions of the agreement. The agreement was entered into on December 16, 1982.

For reasons that are not apparent from the record, the Washington County Board of Education now seeks to avoid this contract. According to an affidavit filed by Defendant, the energy savings to the Board during construction alone amounted to approximately $30,000. The affidavit also states that Plaintiff is currently using all of the installed equipment but has refused to make any payments. The statements in the affidavit have not been controverted by Plaintiff.

The Board of Education argues that it was without the authority to enter into the contract in the first place because the contract required the expenditure of money beyond the annual budget adopted for the current fiscal year. According to the Board, the principal defects in the contract are its duration of seven years and the requirement that the Board provide MarketAmerica with documentation showing that they are binding future Boards of Education to the terms and conditions in the agreement. In its argument that it was without capacity to enter into the contract with MarketAmerica, the Board of Education places heavy emphasis on *State ex*

*rel. Brown v. Polk County,* 165 Tenn. 196, 54 S.W.2d 714 (1932). In *Brown,* the Polk County Board of Education had contracted in 1931 to employ Brown as principal of one of the county schools for a term of five years at a fixed annual salary. After execution of the contract, the board changed personnel and the new board ignored the contract. The principal sought relief and the County demurred, arguing that the board of education had no authority to contract debts and obligations beyond the income provided in the annual budget. In holding the contract void and of no effect, the Court relied on what is now codified at T.C.A. § 49–2–203(a)(11) and § 49–2–204. The former section requires the county superintendent to prepare an annual budget to be submitted to the board of education for approval and to the county court for adoption. The latter section provides that any member of the board of education who votes to make debts beyond the income provided for in the school budget for any school year shall be declared guilty of a misdemeanor. The Court felt that the above statutes contemplated coordination between the revenue-raising and revenue-spending agencies of local government. The Court stated that

> [t]he limitation upon the spending power of the county board of education, coupled with the requirement of an annual budget to be made upon the approval of the county court, imports a limitation upon the power of the board to make a binding contract of employment or other contract for expenditure of money beyond the annual budgets prescribed by the Act, a requirement essential to reasonable management of county revenues and expenditures to avoid bankruptcy.

165 Tenn. at 200, 54 S.W.2d at 716.

The school board argues that *Brown* is authority for the proposition that a local government is without capacity to enter into contracts that require expenditures beyond the budget of the current fiscal year.

MarketAmerica argues that *Brown* is factually distinguishable from the case at bar. It maintains that expenditures under the present contract come exclusively from money saved as a result of reduced energy consumption and therefore *Brown* and the statutory provisions that it relied upon are inapplicable. MarketAmerica argues that the school board has an ongoing responsibility to provide utilities for school buildings, and that the contract in question was merely the means selected by the Board to most efficiently undertake that responsibility. Defendant maintains that this contract is consistent with the public policy announced in *Brown,* i.e., "reasonable management of county revenues and expenditures to avoid bankruptcy." *Id.* at 199, 54 S.W.2d at 716.

Defendant also relies on subsequent Court of Appeals decisions that have not followed *Brown. Yearwood and Johnson Architects, Inc. v. Langford,* 589 S.W.2d 378 (Tenn.App.1979); *Hamblen County v. City of Morristown,* 584 S.W.2d 673 (Tenn. App.1979); and *Cox v. Greene County,* 26 Tenn.App. 628, 175 S.W.2d 150 (1943). *Cox* involved a contract between a school board and a person hired to serve as clerk and stenographer. The board sought to avoid the contract on grounds the contract extended beyond the term of the present board. In rejecting this argument, the court observed that the legislature intended the school board to function as a continuous body and that transactions had or contracts made are transactions and contracts of the board as a continuous body and not of individual members. The court also observed a distinction between the governmental and proprietary functions of a governing body, quoting 43 Am.Jur. *Public Officers* § 292, at 101 (1942):

> [I]n the exercise of business or proprietary powers, a board may contract as any individual ... contracts pertaining to the ordinary business affairs of a municipality or county, such as contracts for water supply, street lighting, and the leasing of municipal property to private parties, are ordinarily upheld, although extending beyond the term of office mak-

ing them, in the absence of fraud or other inequitable circumstances.[1]

26 Tenn.App. at 632, 175 S.W.2d 150.

In the case at bar, MarketAmerica argues that a contract involving the provision of utilities involves the exercise of "proprietary" functions and is therefore valid under *Cox*. The *Cox* court also relied on the fact that the county budget included an allocation of funds for the position involved and that the Board had a duty to hire clerical assistants. Similarly, MarketAmerica argues that the budget includes funds for utilities and that payments under this contract come out of this allocation. Defendant also contends the Board has a duty to provide utilities in the most economical fashion and that this contract is a means to that end.

In *Hamblen County v. City of Morristown*, 584 S.W.2d 673 (Tenn.App.1979), the Court of Appeals upheld a contract that called for extensive expenditures and long-term commitments relative to the joint operation of the school system. The contract was upheld even though it extended beyond the terms of those in office at the time of its execution.

The Court of Appeals in the case at bar relied heavily on *Yearwood and Johnson Architects, Inc. v. Langford*, 589 S.W.2d 378 (Tenn.1978). In that case, the Gibson County Board of Education had entered into a contract with an architectural firm for services to be rendered in connection with a proposed building project. The contract contained a contingency clause that provided that the architectural fee would not be paid if money for the construction of the school was not appropriated. Yearwood and Johnson performed substantial services in 1969 and 1970. The Quarterly County Court refused to fund the proposed project in 1970. In 1976, the Board of Education entered into a new contract with another firm to perform similar services. Yearwood and Johnson insisted that the 1976 project was a continuation of the project contemplated in 1969 and that therefore the Board of Education was liable under the 1969 contract. The Board argued that the contract was void *ab initio* or unenforceable. The Court of Appeals disagreed, although it did not discuss *Brown, supra*. The Court noted that the "Board voluntarily and properly entered into the contract and thereafter accepted substantial services performed by Yearwood and Johnson pursuant thereto." 589 S.W.2d at 383. We assume without deciding that the Court found *Brown* inapplicable and saw no need to discuss it.

It has been suggested by Plaintiff that the Court of Appeals in *Yearwood and Johnson* and in the case at bar has overruled *Brown, supra*, which was a Supreme Court decision. The dissenting judge in this case apparently agreed, stating "I question whether the Court of Appeals can overrule the Supreme Court whether implicitly or otherwise." However, the plain language of the Court of Appeals majority opinion indicates that it merely distinguished *Brown* and found *Yearwood and Johnson* more directly on point. Similarly, *Yearwood and Johnson* did not overrule *Brown*, for *Brown* was not discussed. Clearly, the Court of Appeals in both *Yearwood and Johnson* and in the case at bar found *Brown* distinguishable from the case before it at that time. Neither decision overruled *Brown*, implicitly or otherwise.

■ Plaintiff also contends that recent legislation indicates that counties were prohibited from entering into long-term contracts of the type involved here. Chapter 186 of the Public Acts of 1983, presently codified at T.C.A. § 7–51–901 et seq., authorizes county governments to enter into certain long-term contracts, leases and lease-purchase agreements. Plaintiff contends that this legislation authorizes counties to do what they could not otherwise do

---

1. It is also said that "the general rule is that contracts of employment for a period beyond the term of the employing board are not valid. The principle is of particular importance where the nature and character of an employment are such as to require a board or officer to exercise supervisory control over the appointee." 63A Am.Jur.2d *Public Officers and Employees* § 334, at 911 (1984). *Brown* is of course consistent with this general rule.

under *Brown;* that is, enter into contracts for the expenditure of money beyond the budget adopted for the current fiscal year. It is not disputed that the new legislation does not govern the present dispute because the contract had been executed prior to the effective date of the statute.

It appears that the present lawsuit was precipitated in part by an opinion of the Attorney General for the State of Tennessee that concluded that the Washington County Board of Education was without the necessary authority to enter into the contract with MarketAmerica. That opinion, dated February 25, 1983, relied solely upon this Court's decision in *Brown* and previous opinions of the Attorney General. The Attorney General observed that the duration of the contract and the provision requiring documentation that future boards would be bound were the principal deficiencies of the contract. Although opinions of the Attorney General are useful in advising parties as to a recommended course of action and to avoid litigation, they are not binding authority for legal conclusions, and courts are not required or obliged to follow them. It is worth noting that the advice of the Attorney General in this case was not sought until the contract had already been executed and MarketAmerica had already begun to perform.

After carefully considering the respective arguments of counsel and the relevant legal authorities, this Court is of the opinion that the contract entered into between MarketAmerica, Inc. and the Washington County Board of Education is valid and binding upon both parties. Because of the importance of the issues in this case to local governments, we are compelled to elaborate on our reasons for this conclusion.

The contract is abundantly clear in its provisions that payments by the Board of Education are to come out of savings realized by the Board on energy costs. If no savings result, no expenditure on the part of the Board is required. The contract therefore requires the expenditure of no additional funds above that which would be expended for utilities if the contract had not been executed. This factor alone distinguishes this case from *State ex rel. Brown v. Polk County, supra.* The considerations present in *Brown,* the need to coordinate revenue-raising and revenue-spending, and the need for "reasonable management of county revenues and expenditures to avoid bankruptcy," 54 S.W.2d at 716, 165 Tenn. at 200, are conspicuously absent in the present controversy. The contract guarantees the county savings on its utility bills. The record reflects that savings during construction alone amounted to approximately $30,000. The potential for extensive savings of county monies seems to be quite good. In any event, the contract does not require the county to raise any additional revenue than if the contract were not in existence. Nothing in the language or intent of T.C.A. § 49–2–203(a)(11) or § 49–2–204 prohibits this type of contractual relationship.

The validity of the contract is also supported by *Cox v. Greene County, supra.* The *Cox* court noted that the budget included an allocation of money for the position involved and that the county had a statutory obligation to hire clerical assistants. Similarly, in the case at bar the Board of Education has an ongoing responsibility to provide utilities for the public schools under its control. Although the budget of the school board is not part of the record in this case, we may fairly assume that the budget includes an allocation of funds for utilities in the various school buildings. This is an ongoing responsibility that the Board is obligated to undertake. T.C.A. § 49–2–203(a)(2) states "[i]t shall be the duty of the local board of education ... [t]o manage and control all public schools established or that may be established under its jurisdiction." The provision of utilities in the most economical fashion is a part of this management responsibility. However, it should be pointed out that our decision is not based on any distinction between "governmental" and "proprietary" functions, as mentioned in *Cox, supra.* As this Court noted in *State ex rel. Associa-*

*tion For The Preservation of Tennessee Antiquities v. City of Jackson,* 573 S.W.2d 750, 754 (Tenn.1978), "we do not find the dichotomy of 'governmental' and 'proprietary' functions to be particularly helpful from a standpoint of legal analysis...." Attempts to distinguish contracts entered into in "governmental" as opposed "proprietary" capacities contributes only ambiguity and confusion. Courts have been altogether unsuccessful in defining the scope of "governmental" functions. *See Garcia v. San Antonio Metro Transit Authority,* 469 U.S. ——, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

■ Plaintiff's argument that Chapter 186 of the Public Acts of 1983 acknowledged that counties were without authority to enter into long-term contracts prior to that legislation is not supported by the legislative history. Senator Cohen and Representative Burnett, the Senate and House sponsors of the bill, indicated that the bill "only clarifies what cities could always do." One sponsor further stated that the legislation was intended to clarify the law in this area because an opinion of the Attorney General had suggested that counties lacked the capacity to enter into contracts requiring payments beyond the current fiscal year. The new legislation and the debate concerning it illustrates that the legislature never intended that Chapter 2 of Title 49 serve as a limitation upon the authority of counties to enter into long-term contracts. Comments of the sponsors also indicate that the legislation was intended to eliminate any distinction in contractual capacity between the "governmental" and "proprietary" functions of local government. The new statute effectively obliterates the distinction as it relates to contractual capacity of local governments. Although the legislation

does not apply to the present contract, for future cases it effectively modifies *Brown.*[2]

Finally, there is no question that the equities in the case strongly support the position of MarketAmerica. After soliciting energy management proposals, the Board of Education selected the proposal of MarketAmerica and knowingly and voluntarily entered into a contract with them. Only after MarketAmerica had begun to perform and had rendered valuable services did the Board seek to avoid the obligations of the contract. A similar situation took place in *Yearwood and Johnson Architects v. Langford, supra,* "[t]he Board voluntarily and properly entered into the contract and thereafter accepted substantial services ... pursuant thereto." 589 S.W.2d at 383. The record reflects that the system installed by MarketAmerica cost approximately $456,000. According to Defendant, the system is currently in place and the Board of Education is enjoying its benefits. The Board has apparently refused to make any payments although the system was operational months prior to the filing of this lawsuit. As was stated in *Trull v. City of Lobelville,* 554 S.W.2d 638 (Tenn.App.1976), "whether by a valid contract without infirmity or by estoppel to plead the infirmity, or by implied contract to substitute for an invalid contract, the results are the same, that is, that the city is obligated to honor the conditions under which it induced or permitted plaintiff to perform the construction heretofore described."[3] Id. at 642.

■ In conclusion, we hold that a valid contract exists between the Washington County Board of Education and MarketAmerica, Inc. The judgment of the Court of Appeals is accordingly affirmed.

COOPER, C.J., and FONES, BROCK and HARBISON, JJ., concur.

---

2. *Brown* is in agreement with the general rule that employees under the personal supervision of a particular board should serve concurrently with that board. Nothing in this opinion should be construed as disapproving of this rule. *See* 63A Am.Jur.2d *Public Officers and Employees* § 333, at 911 (1984).

3. Since we have held that a valid contract existed, we need not reach the issue of estoppel urged by Defendant. For a discussion of estoppel under these circumstances, see 56 Am.Jur.2d Municipal Corporations § 527 et seq. (1971).