IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 6, 2003 Session

## RANDY ARNWINE v. UNION COUNTY BOARD OF EDUCATION, ET AL.

**Appeal by permission from the Court of Appeals**
**Chancery Court for Union County**
**No. 3884      Billy Joe White, Chancellor**

_____

### No. E2001-02719-SC-R11-CV - Filed November 7, 2003

_____

We granted permission to appeal in this case to determine whether the Union County Board of Education had authority to enter into a four-year employment contract with an assistant superintendent. The trial court found that the parties' four-year contract was valid. The Court of Appeals reversed the trial court's decision, concluding that no statutory authority existed for the Union County Board of Education to enter into a multi-year employment contract with an assistant superintendent. We affirm the decision of the Court of Appeals.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Lynn Tarpy and Thomas M. Leveille, Knoxville, Tennessee, for the appellant, Randy Arnwine.

Jenny Coques Rogers and John C. Duffy, Knoxville, Tennessee, and Charles W. Cagle, Nashville, Tennessee, for the appellees, Union County Board of Education and David F. Coppock.

### Opinion

### I. Facts and Procedural History

The plaintiff, Randy Arnwine, was first employed by the Union County Board of Education ("the Board") in 1979 as a teacher. He later was promoted to principal, and, between 1995 and 2000, he served as the Personnel, Safety, and Transportation Supervisor. At the Board's July 1, 2000, meeting, six of the seven members present voted to approve a motion made by Chairman Fred Simmons to give Arnwine the additional title of "assistant superintendent." The relevant minutes of the meeting read:

Motion Simmons, seconded Williams under Randy Arnwine's title add assistant

superintendent, for David[] [Coppock's] term beginning September 1, 2000, along with his other titles with no extra pay.

Board members requested a list of duties and job description.

Motion Carried.

Mr. Warwick voted - No.

Prior to this time, no person had ever been employed as an assistant superintendent in Union County.

At Simmons' request, Arnwine drafted a document entitled "Contract of Employment between Randy G. Arnwine and the Union County Board of Education." The contract,[1] dated August 26, 2000, provided for Arnwine's employment as assistant superintendent to "commence on September 1, 2000, and continue for an initial four (4) year term, ending August 31, 2004." The document was signed by Simmons and notarized on August 26, 2000. Arnwine also signed the document, but his signature was not notarized. No other Board member signed the document. It is quite clear that the Board did not discuss Arnwine's contract at any meeting. After his defeat in the August 2000 election, Simmons left the Board on September 1, 2000.

On September 1, 2000, the Director of Schools, David Coppock,[2] wrote Arnwine notifying him of his immediate transfer from his position in the central office to the position of in-school detention monitor at a middle school. The letter stated, "Effective September 1, 2000, transfers of employees within the school system do not require approval of the local board of education. The Education Improvement Act authorizes a Director of Schools to transfer and otherwise assign employee positions in the system." Arnwine's pay was to be maintained for the 2000-2001 school year,[3] but it was to be "adjusted consistent with [Arnwine's] assignment within the system" for the 2001-2002 school year.[4] Due to budgetary constraints, the position formerly held by Arnwine was not filled. Rather, the duties of that position were allocated among other employees.

Following his transfer, Arnwine sought a declaratory judgment that his four-year contract with the Board was valid and enforceable. He also requested that the court declare his "demotion"

---

[1]Arnwine adapted his contract from the one that existed between the Board and David Coppock, Director of Schools. However, unlike Arnwine's contract, Coppock's contract was voted on and approved by the full Board.

[2]When this suit began, Coppock had been Superintendent for a number of years. Coppock was appointed to the position of Director of Schools effective September 1, 2000. Pursuant to Tennessee Code Annotated section 49-2-203(a)(15)(A) (1996 & Supp. 2000), the terms "superintendent" and "director of schools" can be used interchangeably.

[3]When a teacher is dismissed or not reelected, "notice must be received prior to April 15 to be applicable to the next succeeding school year; provided, that the board of education may transfer any teacher from one (1) position to another at its option." Tenn. Code Ann. § 49-5-409(b)(2) (1996 & Supp. 2000).

[4]Arnwine's assignment for the 2001-2002 school year was as a teacher of fourth grade students.

invalid based upon his contract and the relevant Tennessee statutes. The trial court found that the minutes of the July 1, 2000, meeting evidenced a valid four-year contract between the Board and Arnwine. The trial court further found that although Coppock and the Board had the authority to transfer Arnwine to another position within the system, his salary during the four-year contract term could not be reduced.

On appeal, the Court of Appeals concluded that the Board was without statutory authority to enter into a multi-year employment contract with Arnwine; consequently, it held that the contract between the Board and Arnwine was neither valid nor enforceable. Because the Court of Appeals decided the case upon the Board's lack of authority to enter into a multi-year employment contract with an assistant superintendent, it did not reach the issue of whether the minutes of the July 1, 2000, meeting constituted a valid contract.

## II. Standard of Review

This case involves the scope of a school board's authority to contract with an employee. The scope of local government authority is a question of law, and thus, our review is de novo with no presumption of correctness given the judgments of either the trial court or the Court of Appeals. S. Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001).

## III. Analysis

Does a local school board have the authority to enter into a multi-year contract with an assistant superintendent? A school board is statutorily authorized to enter into four-year employment contracts with directors of schools. Tenn. Code Ann. § 49-2-203(a)(15)(A) (1996 & Supp. 2000). A school board may also enter into a four-year contract with a principal. Tenn. Code Ann. § 49-2-303(a)(1) (1996) (stating that a contract with a principal "shall not exceed the contract term of the current superintendent"). In contrast, the statutes provide scant guidance regarding assistant superintendents, as the only mention of "assistant superintendent" appears in Tennessee Code Annotated section 49-5-903 (1996), which designates employees covered by local retirement systems. This provision is not applicable here.

In determining how assistant superintendents are characterized for purposes of employment contracts, we are, however, guided, by Tennessee Code Annotated section 49-5-501(10) (1996), which provides that "[a]s used in this part, unless the context otherwise requires[,]" a teacher is defined as including "teachers, supervisors, principals, superintendents and all other certificated personnel employed by any local board of education, for service in public, elementary and secondary schools in Tennessee, supported in whole or in part by state or federal funds." Because we find no provision specifically referring to an assistant superintendent in section 49-5-501(10), we conclude that an assistant superintendent fits into the category of a "supervisor," who, by definition, is a "teacher."

We must now consider whether a school board has the authority to enter into a multi-year contract with a teacher. "[T]his Court has recognized that municipal governments in Tennessee

derive the whole of their authority solely from the General Assembly . . . ." S. Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001). Thus, "absent some indication to the contrary, the General Assembly must be presumed to have endowed local governments with only as much authority as it has granted through the language of its delegation." Id. at 712.

It is apparent that school boards have the authority to enter into contracts with teachers.[5] There is no express authority, however, for such teachers to have multi-year contracts. Therefore, we must determine whether such authority is implied by looking at the intent of the legislature.

Our Court has held that in determining the authority of local school boards, it is proper to apply Dillon's Rule to construe the intent of the General Assembly. S. Constructors, 58 S.W.3d at 714-15. "At its most basic level, Dillon's Rule is a canon of statutory construction that calls for the strict and narrow construction of local governmental authority." Id. at 710. Dillon's Rule provides that a municipal government has the authority to act only when:

> (1) the power is granted in the "express words" of the statute, private act, or charter creating the municipal corporation; (2) the power is "*necessarily or fairly implied* in, or *incident* to[,] the powers expressly granted"; or (3) the power is one that is neither expressly granted nor fairly implied from the express grants of power, but is otherwise implied as "essential to the declared objects and purposes of the corporation."

Id. at 710-11 (discussing the holding of City of Nashville v. Linck, 80 Tenn. (12 Lea) 499 (1883)). "[W]hile Dillon's Rule is essentially only a canon of construction, it continues to reflect the constitutional realities of local government in this state." Id. at 711. We also emphasize that "[a]ny fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation and the power is denied." Linck, 80 Tenn. (12 Lea) at 504 (quoting 1 John F. Dillon, Commentaries on the Law of Municipal Corporations 173 (1st ed. 1872)).

As we have already concluded that there is no express authority for school boards to enter into multi-year contracts with teachers, we must now determine whether the legislature implied such authority. The Court of Appeals found "a clear intent on the part of the legislature that the employment of teachers is to be accomplished on a year-to-year basis." Arnwine v. Union County Bd. of Educ., No. E2001-02719-COA-R3-CV, 2002 WL 869960, at *3 (Tenn. Ct. App. Nov. 4, 2002). The intermediate court noted that the time frame of a "school year" is "a concept central to the statutory scheme regarding teacher employment in the school setting." Id. at *4. Considering the education statutes in light of Dillon's Rule, we also conclude that the General Assembly did not intend to grant local school boards the authority to enter into multi-year contracts with teachers.

---

[5]Local boards of education are granted the authority to "[e]lect, upon the recommendation of the superintendent, teachers who have attained or are eligible for tenure and fix the salaries of and make written contracts with such teachers[.]" Tenn. Code Ann. § 49-2-203(a)(1) (1996 & Supp. 2000); See also Tenn. Code Ann. §§ 49-5-5206(a), 49-5-5207(a), 49-5-5208(a)(2) (1996).

-4-

The Court of Appeals correctly analyzed the education statutes to determine that there is no legislative authority for school boards to enter into multi-year contracts with teachers. Among others, the appellate court analyzed the following statutes. Tennessee Code Annotated section 49-5-409(b)(2) (1996 & Supp. 2000) provides that teachers who are dismissed or not reelected must receive notice prior to April 15 to be applicable to the next succeeding school year. Tennessee Code Annotated section 49-5-401(a) (1996 & Supp. 2000) provides that "[a]ll educators and other school personnel to be employed for the following school year shall be assigned to the several schools by May 15 next preceding the school year for which such persons are employed." Tennessee Code Annotated section 49-5-401(c) (1996 & Supp. 2000) further provides that superintendents must file with the commissioner of education a complete list of all personnel employed for the ensuing school year by June 1. Moreover, Tennessee Code Annotated section 49-5-402(a) (1996 & Supp. 2000) provides that the superintendents must consider the training and experience of school personnel and the respective state salary schedule for each school year when establishing salary ratings. The superintendents should then file such information with the commissioner of education by December 1. Tenn. Code Ann. § 49-5-402(c) (1996 & Supp. 2000).

The Court of Appeals also examined the following statutes regarding teachers in the "career ladder" program. Tennessee Code Annotated section 49-5-5206(a) (1996) provides that "[a]ny duly certified career level I teacher shall be employed for ten (10) months." Tennessee Code Annotated section 49-5-5207(a) (1996) provides that "[u]pon receiving a career level II teacher certificate, a teacher shall choose either a ten-month or eleven-month contract." Finally, Tennessee Code Annotated section 49-5-5208(a)(2) (1996) provides that "[u]pon receiving a career level III certificate, a teacher shall choose a ten (10), eleven (11), or twelve-month contract." Based on the foregoing statutes, we conclude that there is no legislative intent for teachers to receive multi-year contracts.

As we have determined that an assistant superintendent is a teacher for purposes of employment contracts, we further conclude that there is no legislative authority for a school board to enter into a multi-year contract with a teacher.

Nevertheless, Arnwine argues that Tennessee Code Annotated section 7-51-903 (1992) authorizes school boards to enter into multi-year contracts. That statute provides:

> Except as otherwise authorized or provided by law, municipalities are hereby authorized to enter into long-term contracts for such period or duration as the municipality may determine for any purpose for which short-term contracts not extending beyond the term of the members of the governing body could be entered; provided, that the provisions of § 7-51-902 shall govern the periods or terms of contracts, leases, and lease-purchase agreements with respect to capital improvement property.

Id. Our Court addressed the issue of long-term contracts in Washington County Board of Education v. MarketAmerica, Inc., 693 S.W.2d 344 (Tenn. 1985). In that case, the Washington County Board of Education entered into a seven-year contract with MarketAmerica, Inc. in which MarketAmerica

was to provide a service that would purportedly reduce energy consumption in the Washington County School System. Id. at 345. This Court held that the school board had the authority to enter into such a contract. Id. at 348. Although the contract in Washington preceded Tennessee Code Annotated section 7-51-903, we held that the statute would apply to future cases involving school boards. Id. at 349.

We conclude, however, that the current case is distinguishable from Washington. That case involved a school board making an outside contract with a utility company. The case at issue here involves employment contracts within the school system; there are specific statutes referring to personnel and employment contracts in education. Specific statutory provisions control over conflicting general provisions. See Dobbins v. Terrazzo Mach. & Supply Co., 479 S.W.2d 806, 809 (Tenn. 1972). "[W]here the mind of the legislature has been turned to the details of a subject and they have acted upon it, a statute treating the subject in a general manner should not be considered as intended to affect the more particular provision." Woodroof v. City of Nashville, 192 S.W.2d 1013, 1015 (Tenn. 1946). Thus, we conclude that Tennessee Code Annotated section 7-51-903 does not apply in this case because the legislature specifically addressed issues relating to employment within the educational system. See Tenn. Code Ann. § 49-1-101, et seq. We also note that section 7-51-903 provides that it applies "[e]xcept as otherwise authorized or provided by law." We conclude that the employment contracts in education fall outside the reach of Tennessee Code Annotated section 7-51-903.

Because no express authority exists for a school board to enter into a multi-year contract with a teacher, we conclude that the Board in this case did not have authority to enter into a multi-year contract with Arnwine for the position of assistant superintendent.

## IV. Conclusion

For the foregoing reasons, we affirm the judgment of the Court of Appeals. Costs of the appeal are taxed to the appellant, Randy Arnwine, for which execution may issue, if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE