P. B. Rowe *v.* The State.*

(*Nashville,* December Term, 1931.)

Opinion filed July 2, 1932.

---

*As to sufficiency of indictment for obtaining property by false pretenses, see 11 R. C. L., 857 et seq.; R. C. L. Perm. Supp., p. 3011; R. C. L. Pocket Part, title False Pretenses, section 39 et seq.

As to ability to detect falsity, see 11 R. C. L., 834, 835; R. C. L. Perm. Supp., p. 3006.

As to evidence of other false representations and similar transactions, see 11 R. C. L., 867; R. C. L. Perm. Supp., p. 3012.

As to delivery of property fraudulently obtained, see 11 R. C. L., 843; R. C. L. Pocket Part, title False Pretenses, section 24.

BATES, SHEA & FRAZER, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The plaintiff in error has been convicted of obtaining money under false pretenses and given a maximum sentence of three years in the penitentiary.

We have orally discussed the facts and it is sufficient to say here that plaintiff in error Rowe, president of a corporation called the Rowe Chemical & Supply Company, by various false representations as to the volume of business being done by that company, orders it had received, misrepresentations as to its physical properties in other States, which physical properties were non-existent, and other misrepresentations, succeeded in borrowing for that company large sums of money from persons in Memphis amounting to about $175,000.

The particular transactions upon which he stands convicted here consist in obtaining from one Alexander, a resident of Memphis, two sums of money, one of $1,000 and one of $3,750, upon representations to Alexander that the money was needed to settle freight charges and

cost of goods shipped to a supposititous factory in New Jersey, to meet the pay roll at that factory, etc. Alexander had previously loaned to Rowe for this corporation several thousand dollars upon the faith of false statements made by Rowe not necessary to set out. As a matter of fact, there was no factory in New Jersey and the corporation had no property there.

It is first urged that the court below erred in failing to quash the indictment because the indictment fails to state in what manner or by what means the prosecutor was induced to part with his money and fails to negative the pretense employed.

This criticism of the indictment is not, in our opinion, well made. The means by which the prosecutor was induced to part with his money are set out with some detail and it is said that ''by such false and fraudulent representations'' the sum of money was obtained and that plaintiff in error well knew that said ''statements, representations and pretenses were false and fraudulent.'' We think this language does negative the pretense employed.

The principal contention made in behalf of the plaintiff in error is that the representations upon the faith of which the prosecutor was induced to part with his money were not such as were calculated to deceive a man of ordinary prudence and caution. That unless false pretenses are of such a character, they will not justify a prosecution under Section 6568, Thompson's-Shannon's Code.

This statute has been before the court in a number of cases. *Chapman* v. *State,* 39 Tenn. (2 Head), 36; *McCorkle* v. *State,* 41 Tenn. (1 Cold.), 333; *State* v. *DeHart,* 65 Tenn. (6 Baxt.), 222; *Delaney* v. *State,* 66 Tenn. (7 Baxt.), 28; *Bowen* v. *State,* 68 Tenn. (9 Baxt.), 45; *Moul-*

*den* v. *State,* 73 Tenn. (5 Lea), 577; *Canter* v. *State,* 75 Tenn. (7 Lea), 349; *Rothschild* v. *State,* 81 Tenn. (13 Lea), 294.

One of the latest of these cases is *Bowen* v. *State, supra.* In that case it was said:

"It is insisted that the false pretenses complained of were not such as would be credited by a person of ordinary caution. We are aware that such language is used in some of the cases passed upon by this court. This restriction upon the operation of the statute is not, in our opinion, authorized by its language.

"The object and purpose of the law is, to protect all persons alike, without regard to the single capacity to exercise ordinary caution, a condition of mind very difficult of definition, and certainly of very different meaning under the various circumstances that may surround the person proposed to exercise it. Thus, a child entrusted with a watch, money or other valuable, to be borne to an artificer, merchant or friend, might be induced, by the most flimsy and self-apparent falsehoods, to part with it: still, if these representations were of a character to secure the credit of the child and deprive it of the possession of the goods, however, absurd such representations might seem to the more mature and experienced, yet it would be such false pretenses by one person to another, as deprived that other of his personal property, as contemplated by the letter and spirit of the law."

In *Rothschild* v. *State, supra,* Judge COOPER reviewed all our decisions under the statute but certainly expressed no disapprobation of the language used in *Bowen* v. *State, supra.*

A still later case, indicating a departure from a strict application of the ordinary prudence and caution rule,

quoted in the early decisions, is *Watson* v. *State,* 84 Tenn. (16 Lea), 604. The defendant was there indicted for a conspiracy to obtain money upon false pretenses under Section 6693, Thompson's-Shannon's Code. The false pretense employed was a corporate bond purporting to be valuable and to have been regularly issued. The bond, however, was not signed and it was argued that an unsigned bond was not calculated to deceive a man of ordinary prudence and caution. The court rejected this contention and said:

"The fact that the bond would have failed to deceive if closely examined, only shows that the means to be used might have been ineffective. The parties took the chance of success, the conspiracy to do this was complete, and whether the means to be used would prove a success or not is not material. They were equally guilty, whether they failed or succeeded. They had conspired to effect the forbidden end."

We quote the following from 11 R. C. L., 834:

"There seems to have been an effort in a large number of cases to shift the responsibility for the deception to the prosecuting witness by showing that it was by reason of his negligence and lack of precaution that the deception was made possible. This appears to be an attempt to invoke the rule in civil actions of deceit, that when a person had at hand the means of investigating the false representations, and might have determined their falsity by the exercise of only ordinary prudence, he will not be heard to say that he was deceived. Although this rule has been applied in some cases, chiefly the early ones, the courts are now generally agreed that the defendant's guilt does not depend upon whether the victim could, with reasonable diligence, have ascertained that the representations were false. When all the cir-

cumstances evince that the representation was made designedly, with an intent to cheat, and was calculated to deceive and capable of defrauding, the prisoner cannot excuse himself by saying that if the victim had been sharp, vigilant, and astute he could have detected the fraud by using the means of detection available to him."

Considering the state of the decisions of this court, if cornered, we would not be inclined to follow some of the earlier expressions but would lean to the rule of the more recent cases as set out in the quotation just preceding.

However, in the case before us, we think there is abundant evidence that the representations made by Rowe were calculated to deceive a man of ordinary prudence and caution. The best proof of this fact is that such representations did deceive some of the more prominent men in Memphis and did deceive an astute member of that bar. All these transactions occurred during the years 1928-1930, when men were buying everything freely and when everything was advancing in price. What was regarded as ordinary prudence and caution in those times would not be so regarded now. The trial judge left it to the jury to say whether the prosecutor herein exercised ordinary prudence and caution. The jury found that he did and we are not disposed to disturb their conclusion.

It is further contended that the prosecutor did not rely upon the false pretenses set out in the indictment and shown by the proof but that he parted with his money solely through a desire to obtain large and exorbitant rates of interest on the loans made to the Rowe Chemical & Supply Company, and it is proven that a very large and exorbitant rate of interest was promised to him. The prosecutor testified, however, that he did not

exact such a rate but that it was voluntarily offered him as an inducement for the loans. The court below also left this question to the jury and they found it against plaintiff in error.

■ Considerable proof was brought in by the State showing transactions with other parties by the plaintiff in error similar to his transactions with the prosecutor. Similar representations upon the faith of which he obtained loans of money. It is urged that the admission of such evidence was erroneous but we do not think so. The trial judge instructed the jury that they could only consider it for the purpose of determining whether or not the plaintiff in error was operating according to a certain scheme or system. We think the evidence might have been considered for a broader purpose. Under the rule insisted on by plaintiff in error, this proof showing what other men did, directly reflected on the care and prudence exercised by the prosecutor.

■ It is again urged that this prosecution cannot be maintained because it does not appear that the plaintiff in error got the benefit of any of the money that he fraudulently obtained, but that all this money went to the corporation. This is not now an adequate defense under statutes like the one upon which this prosecution is based.

"The absolutism of the necessity for actual physical tradition from the accuser to the defendant personally was early relaxed to the extent of holding that a delivery to a person designated by the defendant to receive for his benefit would suffice. *Reg.* v. *Jones,* 1 Den. C. C., 551; *Sandy* v. *State,* 60 Ala., 58; *Com.* v. *Taylor,* 105 Mass., 172; *Com.* v. *Wood,* 142 Mass., 459, 8 N. E. Rep., 432; *Com.* v. *Karpowski,* 167 Pa. St., 225, 31 Atl. Rep., 572;

*Com. v. Schmunk*, 22 Pa. Super. Ct., 348, 207 Pa. St., 544, 56 Atl. Rep., 1088. This was on the theory that defendant expressly constituted the person so designated his agent, and that by such delivery the property passed out of the title, possession, and control of the accuser and into that of the defendant as completely as if the physical delivery had been to the latter in person." *Bates* v. *State,* 124 Wis., 612, 4 Ann. Cas., 365.

See also in this connection *People* v. *Adams,* 3 Denio (N. Y.), 190, 45 Am. Dec., 468, 11 R. C. L., 843, 25 C. J., 606.

*Hays* v. *State,* 159 Tenn., 368, disposes of the criticism made by counsel for plaintiff in error here of the argument by counsel for the State below. Likewise *Galvin* v. *State,* 46 Tenn. (6 Cold.), 283, disposes of complaint made with reference to one of the jurors.

We have considered all the matters urged in behalf of the plaintiff in error but find nothing on the record to warrant a reversal of the judgment below and the same is affirmed.