## Cook *v.* State.

*(Jackson,* April Term, 1936.)

Opinion filed May 23, 1936.

246

JOHN F. HALL, of Jackson, for plaintiff in error.

W. F. BARRY, JR., Assistant Attorney-General, for the State.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The plaintiff in error was convicted of obtaining money under false pretenses and given a sentence of three years in the penitentiary.

A number of assignments of error have been interposed, but they may all be disposed of under the general contention of the plaintiff in error that the evidence preponderates against the verdict and judgment below.

One W. J. Lanier was the owner of a retail grocery in Jackson. He also owned a large dwelling house and it was the custom of his wife from time to time to take boarders. The plaintiff in error, a young man, came to Jackson on March 23, 1935, and applied for board with Mrs. Lanier and was taken in by her.

Lanier was at his store when the plaintiff in error, Cook, arranged for accommodations at the Lanier house, but the two men met when Lanier came home to supper. Cook appears to have been a plausible young man and

very soon ingratiated himself into Lanier's favor. Cook arrived Saturday afternoon. Lanier took the young man to Sunday school and church on the next day and introduced him to a number of people. During the day the two had considerable conversation.

Cook represented to Lanier that his father had recently died and left him $18,000 in government bonds. On Monday Cook came down to Lanier's store, looked around, asked questions about the business, and finally asked Lanier if he would sell out, representing that he (Cook) wanted to go into some kind of business and liked the prospect offered by a purchase from Lanier. Lanier agreed that he would sell and Cook then told him that he would have to sell his bonds in order to raise money to buy the business, asking Lanier at the same time with what bank the latter did business. Lanier referred him to a Jackson bank and Cook went off, returning shortly with the report that he had interviewed Lanier's banker and arranged for the handling of his bonds.

The two men had some further talk and the talk ended up by Lanier giving to Cook $100 in currency in Exchange for Cook's postdated check on the Jackson bank. Cook's statement to Lanier was that he had no money with him and would have to go back to Nashville to get his bonds. He agreed that he would bring the bonds back at once or send them to Lanier by registered mail, and made inquiry at the post office, in Lanier's presence, as to the cost of sending the bonds down by such mail.

After Cook got the $100, he left for Nashville. On the next day he called Lanier over long distance telephone and said he would have to have $35 more to arrange some matters with his sister before he could get the bonds. Lanier wired him this $35. Nothing was

heard from Cook for several days and Lanier turned the matter over to the police who located Cook in Memphis, arrested him, and brought him back to Jackson where he was put on trial as aforesaid.

The cashier of the bank at Jackson, with whom Cook represented to Lanier he had an interview about handling the bonds, was introduced as a witness. He testified that he had had no such interview with Cook and had never seen Cook until the latter was pointed out to him in the courtroom.

While Cook was in jail at Jackson, before his trial, Lanier went to see him and asked why Cook had so defrauded him. Lanier testified that Cook replied that he had been "running with the underworld" and that they had picked out Lanier as a likely man upon whom some stolen bonds might be put off. There was no direct proof that Cook was not the owner of $18,000 of bonds, but his statement to Lanier that the purpose was to place stolen bonds with Lanier is a substantial admission that Cook's representation that he owned bonds was false. Moreover, Cook's claim as to an interview with the banker at Jackson with reference to handling the bonds was shown to have been entirely false.

Cook did not take the stand, nor did he introduce any proof whatever in his own behalf, and Lanier's testimony and the testimony of his banker are not in any way contradicted.

The sufficiency of the evidence to sustain the conviction is challenged on three grounds.

First, because it is said the evidence discloses that Lanier did not act with ordinary prudence and caution in the transaction and that a false pretense not calculated to deceive one acting with ordinary prudence and

caution cannot be made the basis of a conviction under the statute.

■ We have some decisions that lend support to this contention made for plaintiff in error. Our earlier decisions, however, were not uniform as pointed out in *Rowe* v. *State*, 164 Tenn., 571, 51 S. W. (2d), 505, 506. We expressed dissatisfaction in that case with the ordinary care and prudence rule in such cases and indicated that when required we would approve, as we now do, the rule of the modern cases set out in the following:

"There seems to have been an effort in a large number of cases to shift the responsibility for the deception to the prosecuting witness by showing that it was by reason of his negligence and lack of precaution that the deception was made possible. This appears to be an attempt to invoke the rule in civil actions of deceit, that when a person had at hand the means of investigating the false representations, and might have determined their falsity by the exercise of only ordinary prudence, he will not be heard to say that he was deceived. Although this rule has been applied in some cases, chiefly the earlier ones, the courts are now generally agreed that the defendant's guilt does not depend upon whether the victim could, with reasonable diligence, have ascertained that the representations were false. When all the circumstances evince that the representation was made designedly, with an intent to cheat, and was calculated to deceive and capable of defrauding, the prisoner cannot excuse himself by saying that if the victim had been sharp, vigilant, and astute he could have detected the fraud by using the means of detection available to him." 11 R. C. L., 834.

As shown by the review of our decisions in *Rowe* v.

*State, supra,* this rule was in reality approved in *Bowen* v. *State,* 9 Baxt. (68 Tenn.), 45, 40 Am. Rep., 71, and *Rothschild* v. *State,* 13 Lea (81 Tenn.), 294.

The second contention made for the plaintiff in error is that, according to Lanier's testimony, Cook obtained the money by a false promise as to his future conduct rather than by a false representation of an existing fact.

It is true that to sustain a conviction the false pretense must be with reference to an existing fact and not a mere promise as to a future undertaking. *State* v. *Higgins,* 148 Tenn., 609, 256 S. W., 875; *Canter* v. *State,* 7 Lea (75 Tenn.), 349. However, when a false promise is coupled with a false statement of fact, the two are taken together as a fraudulent pretense. Both constitute the inducement. The authorities to this effect are abundant and are collected in a note, 7 L. R. A. (N. S.), 278. Instances, a defendant falsely represented that he was a pension agent, coupled with his promise that he would obtain a pension for the defrauded party. *Pearce* v. *State,* 115 Ala., 115, 22 So., 502. The defendant falsely represented that he had goods in the possession of a railroad company and needed money to pay the freight thereon, coupled with his promise to repay the money to the defrauded party upon the arrival of the goods. *State* v. *Montgomery,* 56 Iowa, 195, 9 N. W., 120. The defendant falsely represented to an unmarried woman that he was a single man, coupled with his promise that he would use the money obtained from her in furnishing a house for them to live in and that he would then marry her. *Regina* v. *Jennison,* 9 Cox (Cr. Cas.), 158. Other illustrations may be found in the note just mentioned.

So here Cook falsely represented that he owned

$18,000 of bonds and had arranged with the Jackson bank to handle them, and coupled that with the promise to repay Lanier out of the money obtained from the proceeds of the bonds.

█ The third contention made for the plaintiff in error is that the case is governed by the bad check law, Code, section 11157. *Haley* v. *State*, 156 Tenn., 85, 299 S. W., 799, is relied on for this proposition.

The facts in *Haley's Case* were different. No post-dated check was there involved. Section 11157 provides that "the fact that such maker or drawer did not have on deposit or to his credit with the bank, or person upon which such check, draft or order is drawn, sufficient funds to pay the same when presented, unless such check or draft is paid or accepted when presented, shall be *prima facie* evidence of fraudulent intent."

We do not think the fraudulent intent in respect to the drawing and negotiation of the check, necessary to sustain a conviction under section 11157, here appears. Lanier knew that Cook had no money at the Jackson bank. It was understood that the check was not to be paid until the bonds came down. The check itself did not and was not intended to deceive or mislead.

Statutes similar to our bad check law have been enacted in many of the states and the more recent decisions of the courts of those states take the view that a post-dated check is not within the contemplation of such statutes. *People* v. *Mazeloff*, 229 App. Div., 451, 242 N. Y. Supp., 623; *State* v. *Crawford*, 198 N. C., 522, 152 S. E., 504; *State* v. *Byrd*, 204 N. C., 162, 167 S. E., 626; *Commonwealth* v. *Massaro*, 97 Pa. Super., 149; *Seaboard Oil Co.* v. *Cunningham* (C. C. A.), 51 F. (2d), 321.

As said by the Pennsylvania court in *Commonwealth*

v. *Massaro, supra,* of a postdated check, "It carried on its face implied notice that there was no money presently on deposit available to meet it, with the implied assurance that there would be such funds on the day it became due. At most it amounted to a promise that on the day it became due the drawer would have in the bank a sufficient deposit to meet it."

In *Anderson* v. *Bryson,* 94 Fla., 1165, 115 So., 505, 507, the court said of a postdated check, "The payee knows when he accepts it that the drawer has insufficient funds to pay the check and that its payment depends upon the performance of the drawer's promise to subsequently provide funds for that purpose. Under those circumstances, the payee voluntarily elects to rely, not upon the check, but upon the promise."

■ We accordingly reach the conclusion that the evidence does not preponderate against the verdict and the judgment below. There is some criticism of the trial court's charge, but, in our view of the law as herein indicated, there was no error.

Affirmed.