IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 18, 2013

## DONALD KEITH SOLOMON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Coffee County**
**No. 38,141       L. Craig Johnson, Judge**

**No. M2012-02320-CCA-R3-PC      Filed November 7, 2013**

The petitioner, Donald Keith Solomon, pled guilty in 2009 to numerous charges and, subsequently, sent a letter to the trial court, which apparently was treated as a petition for post-conviction relief, alleging ineffective assistance of counsel.  Appointed counsel then filed an amended petition, setting out as claims for relief that trial counsel had failed to advise the petitioner of his "legal innocence" of three of the charges for passing worthless checks and that, contrary to his understanding at the plea submission, he was required to pay court costs.  Following an evidentiary hearing, the post-conviction court found that the petitioner's trial counsel had "thoroughly investigated and reviewed the evidence" with him and "any decisions made about the timing of filing of motions were a strategic decision." We conclude that the record supports the opinion and order of the post-conviction court denying the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Kyle Mothershead, Nashville, Tennessee (on appeal); and Jeffrey D. Ridner, Manchester, Tennessee (at hearing), for the appellant, Donald Keith Solomon.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Charles M. Layne, District Attorney General; and Kenneth J. Shelton, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In its order, the post-conviction court set out the petitioner's various convictions and sentences which are the subject of this petition:

> In Case Number 37,203, the Petitioner was convicted on September 23, 2009, of passing a worthless check over five hundred dollars ($500.00), a Class E felony, and four counts of passing a worthless check over one thousand dollars ($1,000.00), which are all Class D felonies. For the convictions in Case Number 37,203, the Court imposed a net effective sentence of eight (8) years, which was consecutive to any and all prior sentences. On the same day, the Petitioner was also convicted in Case Number 37,200 of two (2) counts of theft of property under five hundred dollars ($500.00), which are Class A misdemeanors, and two (2) counts of theft of property over one thousand dollars ($1,000.00), each being a Class D felony. The Court imposed a net effective sentence of seven (7) years in that case, which was also consecutive to any and all prior sentences, and consecutive to the sentence in Case Number 37,203. In addition, on the same day, the Petitioner was convicted in Case Number 37,278 of theft of property over one thousand dollars ($1,000.00), which was a Class D felony. After the conviction in that case, the Court imposed a sentence of four (4) years, which was concurrent with the prior two cases. All of the convictions resulted in the net effective sentence of fifteen (15) years, which was consecutive to any and all other sentences. These convictions and sentences were the result of a guilty plea entered upon by the Petitioner upon the advice of his counsel.

Testifying at the hearing on the petition for post-conviction relief were counsel who represented the petitioner when he entered his pleas of guilty and the petitioner, himself. We will review their testimony.

Trial counsel for the petitioner testified that he had been appointed in the matter on August 19, 2009, had talked "briefly" with the petitioner that day, and had begun to investigate the matter that day. He had received two letters from the petitioner on August 24, and, as we understand, one letter on August 27, September 4, September 11, September 17, September 21, and September 28. Counsel had sent letters to the petitioner on August 24, September 4, and September 11, 2009, and spoken with him by telephone on September 11. Counsel said that, in his letter of August 24, he had enclosed copies of the applicable statutes, the sentencing guidelines, and discovery documents from the State. Counsel explained that the had advised the petitioner that the fact that certain of the checks were postdated could raise a defense to those charges:

He had written me a number of times, and that was one of the subjects that usually came up was about whether or not postdating a check was a defense. In fact, in our correspondence he had with [an assistant public defender who represented him in general sessions court], she even talks about that and tells him that that might be a defense and even provided him with a case that he has used in the subsequent writings to explain that there was a possibility that might be a defense in these cases. I wrote him, too, about that, that the postdating of a check could possibly be a defense.

Counsel also advised the petitioner regarding prosecution for postdated checks drawn on a closed back account:

I don't know exactly what I talked to him about the closing accounts. See, he had indicated to me that the checks written on the closed account, that he closed the account after the checks were written, and I looked at the . . . worthless check statutes, and there were two or three questions I had in my mind, and one was actually what the proof would be at trial because I understand what is on the front of the checks, but I am not for sure what a witness was going to testify, that they were postdated on one day and then dated two days later, if that would actually be what the testimony would be. That was one of the questions I had in my mind, and two, I understand the case that the State has quoted and the defense as well that, well, if it is a postdated check, it may be a defense, but I couldn't find any law that would say, "If you write a postdated check on a closed account or if you write a postdated check and then close the account, that that statute wouldn't necessarily apply." What I informed him was that if he was going to try these things that he shouldn't file pretrial motions, that we should go ahead and set it for trial, and if we prevailed on the defense, let jeopardy attach, and then we could prevail on that defense. I told him that would probably only work one time if it worked at all because the State would simply get superseding indictments on theft by fraud or theft by deceit, and in the cases we provided him, that is exactly what the Court of Appeals or Tennessee Supreme Court said was a remedy to that particular problem.

Counsel testified as to the advice his office furnished in a letter to the petitioner:

"I also anticipate that even if we are successful in arguing that your postdated checks do not fall under the worthless check statute, the State will seek to either amend the charge of theft at the hearing or advise the complainants to obtain theft warrants." As a tactical matter, if you file it pretrial and you are

successful, then you are leaving the State time to seek a superseding indictment. This is not necessarily an unusual thing that crops up in some of my trials. In his case, what makes it more difficult is that he had so many cases pending that even if we were able to successfully argue that in one of those cases – because I had written him and talked to him about severing of trials, which would be advantageous to him – that you could only do that one time, and then the State would simply seek a different strategy.

Counsel did not recall whether the petitioner responded as to this analysis but remembered that his "main emphasis . . . in his letters to [counsel] was trying to resolve all of his cases to get a plea agreement that would resolve all of his cases. . . . [H]e wrote to [counsel] that he would take . . . a 15- to 18-year sentence – consecutive to his parole violation." Counsel said he wrote to the petitioner, saying he "had not made any offers to the State that his sentence would be consecutive to [those pending in] Bedford County." He said that, during the submission, the trial court said that, as for the State's waiving the court costs, this had not been done before and the court was "unaware of any legal authority to do that as the time." As for whether the waiving of court costs was part of the pleas of guilty, counsel said, as we understand, he was not certain: "After we had an agreement, he wanted the court costs waived, and whether he would have entered it or not without the waiving of the court costs, I do not know."

At the post-conviction hearing, the petitioner explained his complaints against trial counsel:

My wife retained [trial counsel] for me, and she was the one that did most of the contacting and everything. He was getting real bad about missing appointments and returning phone calls, and then it got to the point where he was – I think there was two court cases here in Coffee County, I think three in Bedford, where he didn't show up at all, and we kept going on and going on. I was at the Charles Bass Facility waiting to be transported for Bedford County and Coffee County, and I wrote a letter and asked him to, we just need to cut ties, and I would take my chances with another lawyer because I didn't have . . . the judges in both jurisdictions were getting kind of pretty upset. I think the one in Bedford County said, "Hey, if he is not here next time, you are going to go ahead on your own." I didn't like that idea of doing that, so I did. I filed a complaint with the Tennessee Supreme Court, the consumer assistance program. He came to Charles Bass to see me, and he had packaged a deal together. He said, "You know, if I can get this deal, do you want to go ahead and do it, and then if I can't, do you want me to go ahead and pull off the case?" I said, "Yes." I remember I was in Nashville at Charles Bass, and

-4-

he said – I talked to him about the concurrent sentencing. He represented me in both jurisdictions. He said he would speak to [the prosecutor], and I can't remember the District Attorney's name in Bedford County, and we spoke about the checks then. He was kind of at that point fed up hearing about the checks. He said, you know, "I have explained this to you. I am beating a dead horse. We have got other things to look at with these theft things. Don't worry about the checks." Whatever the agreement he tried to get, the plea agreement fell through, so [the trial judge] actually allowed him to step down and get off the case and appointed me the Public Defender's Office.

The petitioner explained the situation on the day of his pleas of guilty, saying:

I was still asking a lot of questions to the three and still wasn't getting an answer about the checks and some of the theft issues, and I believe they were kind of getting upset, so they was like, "Well, it's either you take it or you don't. You take it or you don't." I was still . . . asking the questions about the court costs and the checks, and would this work or would it not.

Further, he testified:

I brought up the checks. I brought up the court costs. He said, you know, he had no objections to the court costs. I brought the checks up. I don't remember ever getting a clear thing on the checks, but it was, you know, "These are a package deal. It's take it or leave it, or if not, we'll set them for trial."

As for his claims regarding the court costs, he testified that, as of September 23, 2009, the date of his guilty pleas, he did not know what was being done regarding the court costs.

**ANALYSIS**

As we have set out, the claims raised by the petitioner on appeal were that trial counsel was ineffective because he did not advise the petitioner of his "legal innocence" of three of the felony counts to which he pled guilty; that he failed to advise the petitioner the State's agreement to assume the court costs was "illusory"; that the State's deducting court costs from the petitioner's inmate account violated the plea agreement; and that the plea agreement, or part of it, should be set aside. The State denies the petitioner is entitled to post-conviction relief, and the post-conviction court agreed.

To establish a claim of ineffective assistance of counsel, the petitioner has the burden

to show both that trial counsel's performance was deficient and prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Following the hearing on the post-conviction petition, the court entered its opinion and order denying the petition. In that order, the court found the petitioner had not shown that trial counsel was ineffective:

> This Court has also reviewed [the trial judge's] discussion with the Petitioner at the plea acceptance hearing, and it appears from the Petitioner's

-6-

statements that he was fully aware of all the potential defenses in the case, and that he was fully aware that he was getting a far better deal than what he might have gotten if he had taken all of these cases to trial. [The trial judge] went over with the Petitioner exactly what would be required to find him guilty. [The petitioner] stated that his counsel had gone over the case, the burden of proof, and the defenses that might be available to him. The Petitioner stipulated to the facts that constituted the offenses and stated that he freely and voluntarily entered his plea of guilty on that day.

The Court finds from all of the above that the Petitioner has failed to show that his appointed counsel's representation fell below an objective standard of reasonableness. The Court also specifically finds that the Assistant Public Defender thoroughly conferred with the Petitioner about the evidence in this case and all defense strategies available. The Court also finds that the appointed counsel thoroughly investigated and reviewed the evidence with the Petitioner, and that any decisions made about the timing of filing of motions were a strategic decision. According to the above findings, the Court respectfully denies the Petitioner's Petition for Post-Conviction Relief and dismisses same with prejudice.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

On appeal, the petitioner relies upon the holding of our supreme court in State v. Stooksberry, 872 S.W.2d 906, 908 (Tenn. 1994), that a postdated check cannot be the basis for a worthless check prosecution, which quoted Cook v. State, 94 S.W.2d 386, 388 (Tenn. 1936), and that such a check "'amounted to a promise that on the day it became due the drawer would have in the bank a sufficient deposit to meet it.'" Stooksberry, 872 S.W.2d at 908. Thus, we agree with the petitioner's argument that the fact the check was postdated might have been an available defense in certain of the indictments against him. However, his would have been a pyrrhic victory, for Stooksberry further held that "[a] post-dated

check, as in the <u>Cook</u> case, may be used to commit offenses involving theft, deception, and fraud." <u>Id.</u> Thus, raising this defense would not have insulated the petitioner from criminal liability but only have subjected him to a different set of charges than those he faced.

Additionally, the petitioner asserts on appeal that "[t]he [S]tate agreed to assume the burden of the court costs as part of the plea agreement, and then turned around after the fact and broke the agreement by garnishing [his] inmate trust account." The State responds that the petitioner did not present any evidence at the hearing as to this claim. Further, the State notes that, following the filing of this appeal, the petitioner was allowed by this court to supplement the record by filing with the appellate record certain documents which purport to be records supporting his claims in this regard. However, the State points out, and we agree, that these records were not introduced as evidence or otherwise received by the post-conviction court and, thus, may not be considered by this court on appeal. <u>See</u> Tenn. R. App. P. 24(g). We note, additionally, that the relevance and meaning of these records are not apparent. Accordingly, we concur with the State that this claim is without merit. Further, the post-conviction court was not asked to consider this issue, so there is no ruling of that court for us to review.

The ruling of the post-conviction court is based upon the transcript of the submission hearing and testimony at the post-conviction hearing, the court accrediting the testimony of petitioner's trial counsel rather than that of the petitioner. We have carefully reviewed the record and conclude that it supports the findings of the post-conviction court. Accordingly, we affirm the court's denial of the petition for post-conviction relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
ALAN E. GLENN, JUDGE

-8-