FILED

08/07/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

March 14, 2017 Session Heard at Belmont University College of Law[1]

## STATE OF TENNESSEE v. BART LEO TUCKER

**Appeal from the Circuit Court for Williamson County**
**No. I-CR099094     Joseph Woodruff, Judge**

_____

### No. M2016-01960-CCA-R3-CD

_____

The Defendant, Bart Leo Tucker, was convicted by a Williamson County jury of one count of issuing a worthless check. See T.C.A. § 39-14-121. On appeal, the Defendant challenges the sufficiency of the evidence and contends that the trial court erred by denying his motion for judgment of acquittal. Following our review, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Dismissed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. TIMOTHY L. EASTER, J., filed a separate opinion.

Dustin Faeder, Nashville Tennessee, for the Defendant-Appellant, Bart Leo Tucker.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Kim R. Helper, District Attorney General; and Tammy J. Rettig, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On May 12, 2014, the Defendant purchased a truck from Walker Chevrolet in Franklin, Tennessee. The Defendant made a down payment for the truck in the amount of $15,000 with a check dated May 12, 2014. On May 16, 2014, the Defendant's check was returned for insufficient funds. On September 14, 2015, the Defendant was indicted by a Williamson County Grand Jury for one count of issuing a worthless check, a Class C felony. See T.C.A. §§ 39-14-121(f) (Supp. 2013); 39-14-105(a)(4).

---

[1] Oral argument was heard in this case on March 14, 2017, at Belmont University College of Law in Nashville, Tennessee.

The only witness testimony included in the record provided on appeal is from David Hamilton, the Walker Chevrolet finance manager at the time of the incident. Hamilton first met the Defendant on the day that he bought the truck, May 12, 2014. Hamilton said that he was later told by Walker Chevrolet's controller that the Defendant's check had been returned. Hamilton subsequently contacted the Defendant multiple times and testified that the Defendant "said he would take care of it" and bring another check, but he never did. When asked by the State whether he had "any reason to believe that this check was not good" at the time of the transaction, Hamilton replied, "None, whatsoever."

On cross-examination, Hamilton testified that he had "never once accepted a postdated check." The following exchange then took place during Hamilton's cross-examination:

Defense counsel:  Do you recall any discussion with [the Defendant] about whether the check was ready to clear as soon as it was written or whether he would need a little time for money to come into the account?

Hamilton:  He did ask for two days.

Defense counsel:  Okay.

Hamilton:  He did the deal on a Monday, asked me [to] deposit on Wednesday.

Defense counsel:  Okay. So -- so when he wrote you the check, he communicated to you that the funds were not in the account at that time?

Hamilton:  At that time, no.

Trial court:  I'm sorry, sir. You said not at that time, no. Did he tell you on the 12th that he did not have sufficient funds to cover the check that day?

Hamilton:  He asked me to deposit the check on Wednesday.

Trial court:  All right.

On redirect, Hamilton confirmed that it was company policy to not accept postdated checks, but that it was common to hold a check before depositing it. Hamilton explained that, regarding holding a check, "[i]t's usually just common courtesy stuff. People may be transferring from another account[ ]. They may have cashed out an IRA or things of that nature." Hamilton agreed that requests to hold a check occurred fairly often both at Walker Chevrolet and in the automotive industry in general. When asked by the State whether he had "any reason to believe [the Defendant] would not be able to have the funds in his account to cover that check," Hamilton responded in the negative. Hamilton also denied that he had "any reason to believe it was anything other than a good transaction."

The Defendant moved for judgment of acquittal, arguing that Hamilton's testimony had established an exception to the worthless check statute. The Defendant pointed out that the statute provides that "it is a[n] exception to this offense . . . where the payee or holder knew or had good [and] [ ]sufficient reason to believe the drawer did not have sufficient funds on deposit to his or her credit with the drawee to ensure payment." The Defendant argued that Hamilton's testimony that he was told by the Defendant to wait two days until depositing the check proved that Hamilton knew or had reason to believe that the Defendant did not have sufficient funds at the time he issued the check. The trial court denied the Defendant's motion, summarily concluding that "there are fact issues that are for the jury to decide based upon what would be in the mind of Mr. Hamilton."

The jury found the Defendant guilty as charged and the trial court imposed a five-year sentence, suspended after 180 days, and ordered the Defendant to pay restitution as determined by his probation officer. This timely appeal follows.

## ANALYSIS

On appeal, the Defendant argues that the trial court erred by denying his motion for judgment of acquittal and that the evidence was insufficient to support his conviction for issuing a worthless check. The State responds that the Defendant has waived his challenge to the sufficiency of the evidence by failing to provide a complete record and, waiver notwithstanding, that the jury had sufficient evidence to convict the Defendant.

As an initial matter, we must address the State's contention that the Defendant's claims are waived for failure to provide a complete record on appeal. The State points out that the Defendant only provided a portion of the trial transcript, leaving out "at least one entire witness and the introduction of every exhibit;" however, the State does not specify why these missing portions or any other portions of the transcript were necessary for our review. Instead, the State summarily contends that "[a] defendant cannot show

that the evidence was insufficient when a reviewing court does not have all the evidence." The Defendant responds that he has adequately preserved the issue being appealed by providing only the portion of the transcript that was relevant to this particular issue.

The appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). "Where . . . the record is incomplete, and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which a party relies, this Court is precluded from considering the issue." State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988) (citing State v. Groseclose, 615 S.W.2d 142, 147 (Tenn. 1981); State v. Jones, 623 S.W.2d 129, 131 (Tenn. Crim. App. 1981)). "In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." State v. Bibbs, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing Smith v. State, 584 S.W.2d 811, 812 (Tenn. Crim. App. 1979); Vermilye v. State, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979)).

Here, the Defendant only included portions of the trial transcript rather than the transcript in its entirety. The included portions consist of Hamilton's testimony, the Defendant's motion for judgment of acquittal and corresponding argument, and both parties' closing arguments. It is well-established that an appellate court requires a transcription of only the relevant proceedings in the trial court. State v. Draper, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990). In fact, "[a]n appellate court can address an issue on the merits in the absence of a transcript if the 'technical record' is all that is necessary for review of the issue." Id. at n.13 (citing Nelms v. State, 413 S.W.2d 378, 348) (Tenn. 1968)). Because the Defendant's issues rely primarily on Hamilton's testimony, we conclude that the record is adequate for our review and we will address the merits of the Defendant's arguments.

First, the Defendant contends that the trial court erred by denying his motion for judgment of acquittal. Tennessee Rule of Criminal Procedure 29 provides, in pertinent part:

On defendant's motion or its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Tenn. R. Crim. P. 29(b). When considering a motion for judgment of acquittal, whether at the close of the State's proof or after the conclusion of all proof at trial, the trial court

is only concerned with the legal sufficiency of the evidence and not with the weight of the evidence. State v. Collier, 411 S.W.3d 886, 892 (Tenn. 2013) (citing State v. Blanton, 926 S.W.2d 953, 957 (Tenn. Crim. App. 1996); State v. Adams, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995); State v. Hall, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983)). "This rule empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the state rests or at the conclusion of all the evidence." State v. James, 315 S.W.3d 440, 455 (Tenn. 2010) (citing Overturf v. State, 571 S.W.2d 837, 839 & n.2 (Tenn. 1978)). If a defendant chooses to present proof after the trial court denies the motion for judgment of acquittal made at the close of the State's case-in-chief, then he "waive[s] any claim of error for failure to grant the motion for judgment of acquittal at the conclusion of the proof offered by the State." Collier, 411 S.W.3d at 893. However, if the defendant renews his motion for judgment of acquittal at the conclusion of all the evidence, he does not "waive his right to appeal the denial of the motion made at the close of all of the proof or to challenge the sufficiency of the convicting evidence." Id.

Although not raised by either party, we must first acknowledge another issue of waiver. Based on the limited transcript provided, we cannot determine whether the Defendant presented evidence after the trial court denied his motion, or, if he did, whether he renewed his motion for judgment of acquittal. As stated previously, when a defendant chooses to present proof after the trial court denies the motion for judgment of acquittal made at the close of the State's case-in-chief, he "waive[s] any claim of error for failure to grant the motion for judgment of acquittal at the conclusion of the proof offered by the State." Id. After the Defendant's oral motion for judgment of acquittal at trial, the transcript includes a statement that "[m]ore proceedings were held in open court," followed by the parties' closing arguments. The record does not indicate whether the Defendant presented proof after his motion or, if he did, whether he renewed his motion as required. Because we cannot determine whether the Defendant adequately renewed his motion or judgment of acquittal, or whether he was even required to, we conclude that the issue is waived.

However, because the "the standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction," we will review the defendant's claim as a sufficiency of the evidence challenge. State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000).

Accordingly, we must consider "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). The standard of review for sufficiency of the

- 5 -

evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In applying this standard of review, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). This court shall not substitute its inferences for those drawn by the trier of fact. Dorantes, 331 S.W.3d at 379 (citing State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010); Liakas v. State, 286 S.W.2d 856, 859 (1956)).

Tennessee Code Annotated section 39-14-121(a)(1)(A) provides that a person commits an offense of passing a worthless check who, with fraudulent intent or knowingly,

> [i]ssues or passes a check or similar sight order for the payment of money for the purpose of paying any fee, fine, tax, license or obligation to any governmental entity or for the purpose of obtaining money, services, labor, credit or any article of value, knowing at the time there are not sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check or order, as well as all other checks or orders outstanding at the time of issuance.

T.C.A. § 39-14-121(a)(1)(A). However, the above section does not apply "to a post-dated check or to a check or similar sight order where the payee or holder knows or has good and sufficient reason to believe the drawer did not have sufficient funds on deposit to the drawer's credit with the drawee to ensure payment." Id. § 39-14-121(a)(2).

Here, the Defendant does not claim that his check was post-dated but, rather, that the second part of the exception applies, because Hamilton knew or had good and sufficient reason to believe that the Defendant had insufficient funds when he requested that Hamilton hold the check for two days.

Tennessee courts have rarely addressed this particular exception to the worthless check statute. However, as the Defendant points out, a November 21, 1995 Attorney General Opinion addresses the application of this exception to an almost identical situation in which "a payee accepts a check, which is not post-dated, agreeing to hold the check for 10 days before presenting it to the bank for payment." Tenn. Op. Att'y Gen. No. 95-116 (Nov. 21, 1995). The opinion concludes that the statutory exception is

applicable "because the drawer's request of the payee to delay presentment provides the payee with sufficient reason to believe that there are insufficient funds in the account to ensure payment at the time of issuance." Significantly, the opinion also notes that "[t]he reason the check is bad is insignificant," and that the payee is relying "not on the check, but on the drawer's promise that the check will be made good if held 10 days before presentment."

We note that "[a]lthough opinions of the Attorney General are useful in advising parties as to a recommended course of action and to avoid litigation, they are not binding authority for legal conclusions, and courts are not required or obliged to follow them." Washington Cnty. Bd. of Educ. v. Market America, Inc., 693 S.W.2d 344, 348 (Tenn. 1985); State v. Blanchard, 100 S.W.3d 226, 230 (Tenn. Crim. App. 2002) ("[O]pinions of the state attorney general are merely advisory and do not constitute legal authority binding on this Court."); H & R Block Eastern Tax Services, Inc. v. State of Tennessee, Dep't of Commerce and Ins., Div. of Ins., 267 S.W.3d 848, 861 (Tenn. Ct. App. 2008) ("Attorney General opinions are particularly persuasive when they have been consistently repeated."). Because Tennessee law does not provide sufficient guidance on this issue, we find the November 21, 1995 Attorney General Opinion helpful in determining whether the Defendant is entitled to relief in this case.

The November 21, 1995 Attorney General Opinion relied on this court's opinion in State v. Fred D. Dean, in which we held that fraudulent intent was negated when the defendant used a check to pay for a diamond ring with the understanding that funds would be transferred from his savings to his checking account to make the check good. Slip op. No. 157 (Tenn. Crim. App. Oct. 25, 1984). This court reasoned that "[w]hile the present case does not involve a postdated check, it is similar to the same thing because the victim here knew there were insufficient funds in the defendant's account, and thus he was not relying upon the check but was relying upon the defendant's promise to subsequently deposit funds to cover the check." Id., slip op. at 3; see also Cook v. State, 94 S.W.2d 386, 388 (Tenn. 1936) (holding that a post-dated check implies there is no money available and that "[a]t most it amounted to a promise that on the day it became due the drawer would have in the bank a sufficient deposit to meet it."). Notably, the State did not address the November 21, 1995 Attorney General Opinion or Dean in its appellate brief.

We conclude that here, as in Dean, fraudulent intent was not established as a matter of law because Hamilton was relying on the Defendant's promise at the time of issuance by agreeing to hold the check for two days. This reasoning is further supported by the exception codified in Tennessee Code Annotated section 39-14-121(a)(2). While the defendant may be guilty of theft or subject to other civil penalties, his conviction cannot stand as charged because the fraudulent intent needed to establish the issuance of

a worthless check was negated as a matter of law.  See State v. Stooksberry, 872 S.W.2d 906, 908 (Tenn. 1994) ("A post-dated check, as in the Cook case, may be used to commit offenses involving theft, deception, and fraud."); see also Tenn. Op. Att'y Gen. 95-116 (Nov. 21, 1995) ("The scenario presented in this inquiry could, however, be prosecuted as theft of property or a theft of services."); see also Dean, slip. op. at 2 ("The defendant . . . might or might not be guilty of obtaining goods by false pretenses, but his guilt for passing a worthless check cannot stand.").  Accordingly, the proof fails to establish the element of fraudulent intent, and therefore, the Defendant's conviction must be reversed.

## CONCLUSION

Based on the foregoing authority and analysis, we reverse the judgment of the trial court and dismiss the case.

_____
CAMILLE R. McMULLEN, JUDGE